## TOWN OF SALUDA v. COUNTY OF POLK.

(Filed 10 October, 1934.)

**1. Municipal Corporations G i—Lien for public improvements is inferior to lien for taxes for general revenue.**

The lien against property for street improvements is a lien *in rem* against the land itself, but it is not strictly a tax lien and is based upon the theory of special benefit to the property itself, and therefore does not come within the provisions of Art. VII, sec. 9, requiring all taxes on real and personal property to be levied by uniform rule and ad valorem, and a lien for street assessments, while superior to the liens of mortgages or deeds of trust, C. S., 2713, is subject to the lien of the city and county for taxes for general revenue, and where the property is sold under the tax sale certificates of the city and county, the taxes due the city and county should first be paid before applying the proceeds of sale to the payment of street assessments levied against the property.

**2. Taxation D a—Tax liens due a city are on a parity and are equal with tax liens due the county.**

Counties and cities and towns are governmental agencies of the State, created by the Legislature for administrative purposes, and the Legislature retains control and supervision over both classes of municipal corporations, limited only by the organic law, Art. VIII, sec. 4, and construing ch. 389, Public Laws of 1931, with C. S., 7987, *it is held,* the liens for taxes due a city and the liens for taxes due the county against property situated in the city within the county are on a parity and are equal, and the proceeds of sale of the property in a tax foreclosure suit instituted by the city and county should be applied equally to the payment of city and county tax liens against the property, and the remainder, if any, should then be applied to the payment of a lien for street assessments levied by the city against the property.

APPEAL by both parties from *Finley, J.,* at February-March Term, 1934, of POLK. Affirmed as to both parties.

This is a controversy without action, C. S., 626 to 628, inclusive. The agreed statement of facts is as follows: "(1) That the town of Saluda is a municipal corporation organized and existing under and by virtue of the laws of the State of North Carolina, and has been such a municipal corporation since the year 1880. That the boundaries of said municipal corporation are situated and located within the territorial limits and boundaries of the county of Polk and the State of North Carolina; that the said town has operated as a municipal corporation, being governed by a board of aldermen consisting of four members, duly and regularly elected by the citizens of the town of Saluda, and a mayor, who is also elected by the citizens of said town, and has been so governed since the organization of the said town and the issuing of its charter in the year 1880.

"(2) The county of Polk is a municipal corporation, organized and existing under and by virtue of the laws of the State of North Carolina, and is one of the 100 counties in said State; that the said county of Polk has been such a corporation since its organization in the year 1847.

"(3) That as such municipal corporation the town of Saluda, at various times since its organization, has borrowed money and issued its bonds for various municipal improvements in said town, and the said town now has outstanding against it an indebtedness on account of various bond issues, amounting in principal to approximately $265,000, and interest in the sum of $277,000, which sums consist of bonded indebtedness and obligations of the town of Saluda; that the said bonded indebtedness of the town of Saluda hereinafter referred to is payable in annual installments from the present time to the year 1966.

"(4) That Polk County, in pursuance of the laws, from time to time has duly and legally issued its bonds for county-wide purposes in the principal amount of $711,945, and interest in the sum of $573,271; that the above indebtedness represents principal and interest to be paid in annual installments extending from the present to the year 1961.

"(5) That both of the said municipalities, in order to operate in accordance with the laws of the State of North Carolina, have annually levied taxes for the purpose of operation and for meeting the principal and interest of their bonded indebtedness.

"(6) That there is a certain real property situated on Greenville Street, in the town of Saluda and in the county of Polk, on which taxes at the rate fixed in accordance with the provisions of law were levied and assessed for the year 1929 in the name of J. S. Smith, on a valuation of $3,000 by both the town of Saluda and Polk County, in the following amounts (inclusive of the penalties provided by law), that is to say: Town of Saluda, $81.00, and Polk County, $117.82.

"(7) That the said taxes on said property were delinquent and unpaid, and after the said town of Saluda had become the owner of the tax certificate representing the said delinquent taxes due said town and the said Polk County had become the owner of the tax certificate representing the said delinquent taxes due said county, a joint action was started by said town and said county in accordance with the provisions of section 1 of chapter 389, Public Laws of 1931, for the foreclosure of said certificates; that in addition to the taxes for the year 1929, as above set forth, the following unpaid and delinquent taxes were established as having been lawfully levied and assessed against the said property for the years subsequent to 1929, that is to say: Taxes due Polk County, 1930, $72.00; 1931, $63.60; 1932, $55.50; 1933, $59.40. Taxes due town of Saluda, 1930, $76.20; 1931, $71.40; 1932, $65.40; 1933, $37.50.

SALUDA *v.* POLK COUNTY.

"(8) That in said action there was further established the fact that the town of Saluda had lawfully levied against said property a street assessment in the sum of $547.13, and that the said assessment was owing, unpaid, and delinquent.

"(9) That the said action proceeded to judgment whereby the said tax certificates were ordered foreclosed, and M. R. McCown was appointed the commissioner of the court to make the sale of the property. At the said sale the town of Saluda became the last and highest bidder for the said property in the sum of $414.84.

"(10) This controversy is for the purpose of determining how the said amount shall be distributed by the said commissioner. Polk County contends that the distribution should be made as follows: 1st. That the costs of the action as taxed should be paid. 2d. That the amount remaining should be applied to the payment of the taxes due Polk County for the years 1929 to 1933, inclusive; and 3d. That the excess, if any, should then be applied to the payment of the taxes and street assessments due the town of Saluda.

"The town of Saluda contends that the distribution should be made as follows: 1st. That the cost of the action as taxed should be paid. 2d. That the amount remaining should be applied equally and ratably to the payment of the taxes and street assessments due the town of Saluda and Polk County for the years 1929 to 1933, inclusive, as established in said action, and as herein agreed upon. In other words, Polk County contends that the lien of the county for the said taxes is superior and paramount to the lien of the town of Saluda, while the town of Saluda contends that the respective liens of the town and county are on a parity and of equal dignity."

The judgment rendered in the court below is as follows: "This case coming on to be heard before the undersigned judge now holding the courts of the 18th Judicial District upon agreed case in controversy without action, as appears of record, after hearing the argument and reading the briefs of plaintiff and defendant on the question involved, to wit: (1) Does the street assessment established by the town of Saluda constitute a lien on a parity and of equal dignity with the tax liens due Polk County and the town of Saluda? (2) Are the tax liens due the town of Saluda on a parity and equal with the tax liens due Polk County?

"The court answers the first question 'No,' and the second question 'Yes'; and judgment is hereby rendered accordingly, so that the fund in hand may be divided in accordance with this judgment. T. B. Finley, judge holding the courts of the 18th Judicial District."

The plaintiff excepts to the judgment and assigns error in that the court erred in holding that the street assessment levied by the town of

Saluda did not constitute a lien on a parity and of equal dignity with the tax liens due Polk County and the town of Saluda.

The defendant excepts to the judgment and assigns error in that the court erred in holding the tax liens due town of Saluda are on a parity and equal with the tax liens due Polk County.

Upon the above exceptions and assignments of error, both parties appealed to the Supreme Court.

*Quinn, Hamrick & Hamrick for plaintiff.*
*Massenburg & McCown for defendant.*

CLARKSON, J. The first question presented for our consideration: Is the judgment of the court below correct, which holds that the street assessment levied by plaintiff, the town of Saluda, does not constitute a lien on a parity and of equal dignity with the tax liens due Polk County and the town of Saluda? We think so.

In *Gunter v. Sanford,* 186 N. C., 452 (460), citing many authorities, is the following: "As we have heretofore indicated, the statutes prescribing the method of improving the streets of the town and regulating assessments against property are referred to the right of taxation, and the exercise of such right is not judicial, but entirely legislative. The legislative authority is vested in the General Assembly (Const., Art. II, sec. 1), and counties and municipal corporations, as was said in *Jones v. Comrs.,* 137 N. C., 579, are regarded merely as 'agencies of the State for the convenience of local administration in certain portions of the State's territory, and in the exercise of ordinary governmental functions they are subject to almost unlimited legislative control, except when restricted by constitutional provision'—a principle which has been consistently maintained in the decisions of the Court."

Code of North Carolina, 1931 (Michie), sec. 2713, in part, is as follows: "From the time of such confirmation, the assessments embraced in the assessment roll shall be a lien on the real property against which the same are assessed, superior to all other liens and encumbrances. After the roll is confirmed, a copy of the same must be delivered to the tax collector or other officer charged with the duty of collecting taxes."

In *Kinston v. R. R.,* 183 N. C., 14 (23-24), it is said: "And further, in section 2717, the law provides, if the 'lien is not paid when due, it shall be subject to the penalties now provided as in case of unpaid taxes.' Thus showing a clear purpose of the Legislature to make the lien effective and superior to any and all other liens or encumbrances. It would be an idle thing to confer such a lien and then withdraw any and all means for its effective enforcement, and in our opinion the lien in question here, when properly established, amounts to a statutory mortgage, having preference, as stated, over any and all liens and encum-

brances existent or other, and to be enforced by decree of sale of the property and franchise, as in other cases provided, C. S., 3462-3463." *Hahn v. Fletcher,* 189 N. C., 729 (731); *Farrow v. Insurance Co.,* 192 N. C., 148; *Coble v. Dick,* 194 N. C., 732.

In *Carawan v. Barnett,* 197 N. C., 511, it is held an assessment made upon adjoining land for a street improvement by a town is a charge upon the land constituting a lien superior to all others, C. S., 2713, and not enforceable against the personalty or other lands of the owner, and when the owner of land has been thus assessed, payable in installments, C. S., 2716, and he subsequently dies, it is not a debt of the deceased payable by his personal representative, but a charge against the land itself. The provisions of C. S., 93, as to the order of payment of debts of the deceased has no application. *Statesville v. Jenkins,* 199 N. C., 159.

Article V, section 3, of the Constitution of North Carolina, in part, is as follows: "Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and, also, all real and personal property, according to its true value in money," etc.

Article VII, section 9: "All taxes levied by any county, city, town, or township shall be uniform and ad valorem upon all property in the same, except property exempted by this Constitution."

This section imperatively requires that all real and personal property in county, city, town or township be taxed by a uniform rule, according to its true value in money. *Pocomoke Guano Co. v. Biddle,* 158 N. C., 212.

In *Cain v. Commissioners,* 86 N. C., 8 (15 and 16), speaking to the subject: "These restraints are referable to taxation of objects in which all have a common interest, and when disregarded, render the levy invalid. *Young v. Henderson,* 76 N. C., 420, and cases cited. But there is a class of taxes, or as they are often designated, local assessments, which are imposed only upon those owners of property who, in respect to such ownership, are to derive a special benefit in the local improvements for which they are to be expended, and not within the restraints put upon general taxation."

At page 16: " 'A constitutional provision that taxation shall be equal and uniform throughout the State,' observes *Mr. Justice Dillon,* 'does not apply to local assessments upon private property to pay for local improvements.' 2 Dill. Mun. Corp., p. 617. To like' effect, Burroughs Tax., p. 39."

Taxes for governmental purposes on real estate in accordance with our Constitution must be by a uniform rule and ad valorem. Although the General Assembly has the power to give municipalities the right to make

local improvements, these assessments are in their very nature confined to and benefit particular places, and could not be uniform to meet the requirements of the Constitution. Then, again, they are not for governmental purposes in contemplation of the Constitution. It is a lien *in rem* and resting upon the particular land in which levied.

In *Bosworth v. Anderson* (Idaho), 280 Pac., 227, 65 A. L. R., p. 1372, it is held: "Special assessments for public improvements are not taxes in the strict sense, since they are not assessed for governmental purposes, and are based on the theory of special benefit to the property against which they are levied."

At page 1379: "In *Missouri Real Estate and Loan Co. v. Burri* (1919), 202 Mo. App., 242, 216 S. W., 570, the Court held, without reference to any statute, that the general city tax lien was superior to a special improvement lien, though subsequent in point of time. In passing on the point, the Court said: 'It must be conceded that a general tax which has primarily for its object the support of the government, whereby the government may exist, and lives and property may be protected and the pursuit of happiness guaranteed, is of greater dignity and more importance than a tax bill issued for public improvements. It is true that a general tax is frequently levied for public improvements. But it is not feasible to levy special tax, of the nature here involved, for what we understand to be meant by the expression "support of the government." We can subsist without the special tax, but no civilized government could be organized and maintained without the general tax. So we conclude that the general tax, being first in vital importance, should be allowed first place in the means of payment.' "

25 R. C. L. (Special or local assessments), pp. 82, 83 and 84, in part, is as follows: "The word 'taxes' in a broad sense includes special or local assessments on specific property benefited by a local improvement for the purpose of paying therefor. . . . There are, however, well recognized distinctions between special assessments and taxes levied for general revenue purposes, and the terms 'assessments' and 'tax' or 'taxation' as used in constitutions and statutes are not synonymous, but have been given entirely distinct meanings by the courts. Special assessments are governed by principles that do not apply universally to taxation, and differ from general taxes in the theory on which they are based, the time and manner of their imposition, and the property on which they are levied."

The statute, *supra,* making the assessment "a lien on the real property against which the same are assessed superior to all other liens and encumbrances" is subject to our constitutional provision that "taxation shall be by uniform rule and ad valorem." Thus limited, it is prior to mortgages, deeds of trust, etc., on the property, but subject to the governmental taxes.

The second question for our consideration: Are the tax liens due the town of Saluda on a parity and equal with the tax liens due Polk County? We think so.

In *McCormac v. Commissioners,* 90 N. C., 441 (444-445), citing numerous authorities, it is said: "That it is within the power and is the province of the Legislature to subdivide the territory of the State and invest the inhabitants of such subdivisions with corporate functions, more or less extensive and varied in their character, for the purposes of government, is too well settled to admit of any serious question. Indeed, it seems to be a fundamental feature of our system of free government, that such a power is inherent in the legislative branch of the government, limited and regulated, as it may be, only by the organic law. The Constitution of the State was formed in view of this and like fundamental principles. They permeate its provisions, and all statutory enactments should be interpreted in the light of them, when they apply.

"It is in the exercise of such power that the Legislature alone can create, directly or indirectly, counties, townships, school districts, road districts, and the like subdivisions, and invest them, and agencies in them, with powers, corporate or otherwise in their nature, to effectuate the purposes of the government, whether these be local or general, or both. Such organizations are intended to be instrumentalities and agencies employed to aid in the administration of the government, and are always under the control of the power that created them, unless the same shall be restricted by some constitutional limitation. Hence, the Legislature may, from time to time, in its discretion, abolish them, or enlarge or diminish their boundaries, or increase, modify or abrogate their powers. . . . Such power in the Legislature is general and comprehensive, and may be exercised in a great variety of ways to accomplish the ends of the government." *Board of Trustees v. Webb,* 155 N. C., 379.

A county is subject to control of State Legislature, unless restrained by Constitution. *O'Neal v. Jennette,* 190 N. C., 96. A county is subject to almost unlimited legislative control in exercise of ordinary governmental functions, it being but an agency of the State. *Day v. Commissioners,* 191 N. C., 780; *Hearne v. Stanly County,* 188 N. C., 45.

Article VIII, section 4, of the Constitution of North Carolina, is as follows: "It shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessment and in contracting debts by such municipal corporations."

N. C. Code of 1931 (Michie), sec. 7987, in part, is the following: "The lien of the State, county and municipal taxes levied for any and

all purposes in each year shall attach to all real estate of the taxpayer situated within the county or other municipality in which the tax list is made and placed in the hands of the duly authorized officer for collection, which lien shall attach on the first day of June, annually, and shall continue until such taxes, with any and all penalties and cost which shall accrue thereon, shall be paid, and which lien shall be preferred to any other lien upon the real estate of the taxpayer within the county, whether the same shall have attached prior or subsequent to the said first day of June," etc.

Public Laws 1931, ch. 389, is as follows: "When a certificate of sale is held by a county and also by a city or town for the same tract or parcel of real property, both of such governmental units may be joined as parties plaintiff in the same foreclosure action, and in such event the proceeds derived from a foreclosure sale of such real property, or so much thereof as may be necessary to satisfy the claims, shall be apportioned by the court to the parties according to their respective liens."

It will be seen by the Constitution of this State that almost unlimited power is given the General Assembly in reference to the creation and abolishing of counties, cities and towns of the State. The provision in Public Laws of 1931, ch. 389, joining the county and city or town in a foreclosure suit for the tax "shall be apportioned by the court to the parties according to their respective liens" must be construed *in pari materia* with 7987, *supra*. The liens attach at the same time, and we think the legislative intent is that the tax lien for the town of Saluda is on a parity and equal with the tax lien due Polk County.

In 26 R. C. L., part sec. 361 (Taxation), p. 404, is the following: "As between taxes assessed by a state and by counties, cities and towns, there is no precedence granted to the taxes of the larger and more important governmental subdivision, but the liens for all of such taxes are equal. It is generally held, however, that a lien for general taxes takes precedence over a lien for a special assessment."

The principle involved in this case largely depends on the Constitution and statute law of the particular state. The case of *Orange County v. Jenkins,* 200 N. C., 202, was decided before the Act of 1931, ch. 389, was passed, although we think it distinguishable from the present case—also the case of *Drainage Commissioners v. Farm Association,* 165 N. C., 697.

The county of Polk and town of Saluda are both children, as it were, of the State. The State, the mother, should treat both alike, though one is bigger than the other.

From the Constitution and statute laws of this State, we think there is no error in the judgment of the court below.

Affirmed.