Atkins v. Burden

———————————

CHARLOTTE B. ATKINS, UNMARRIED, AND RACHEL E. SMALL-WOOD, AND HUSBAND, W. L. SMALLWOOD, PETITIONERS v. KATIE P. BURDEN, WIDOW; MARGARET K. WHITEHURST AND HUSBAND, WARREN WHITEHURST; MARIAN MARSH ROBERTS, WIDOW; CLARENCE TALMADGE MARSH, JR. AND WIFE, JUNE R. MARSH; FRANCES P. BURDEN, WIDOW; MARTHA VIOLA BROOKS AND HUSBAND, JOHN BROOKS; ESTATE OF ALVAH A. BURDEN, DECEASED; R. S. BURDEN AND WIFE, CASTINE BURDEN; MARY H. BURDEN, UNMARRIED; ETHEL P. TAYLOE AND HUSBAND, W. A. TAYLOE; W. G. BURDEN AND WIFE, MABEL BURDEN; JESSIE B. PLEASANTS, WIDOW; JUNE P. BURDEN, WIDOW; WILLIAM CLIFFORD BURDEN, JR. AND WIFE, BETTY W. BURDEN; PAUL B. PHILLIPS AND WIFE, BETTY PHILLIPS; ROBERT M. PHILLIPS AND WIFE, JOYCE PHILLIPS; ELIZABETH ANN PHILLIPS, UNMARRIED; EMMA RUTH BURDEN BARNES AND HUSBAND, WILLIAM G. BARNES; BETTY BURDEN, WIDOW OF GEORGE ALLEN BURDEN (NOW MARRIED TO WILLIAM CLIFTON BURDEN, JR.); GEORGE ALLEN BURDEN, JR., UNMARRIED, INFANT; JOHN SMITH, WIDOWER; GEORGE A. SMITH, UNMARRIED; BETTY SMITH SHERROD AND HUSBAND, THOMAS SHERROD; RUTH P. JONES, WIDOW; MARY H. CHEEK BALL AND HUSBAND, EDWARD LYON BALL; HELEN CHEEK, WIDOW; W. C. CHEEK, JR. AND WIFE, LORRAINE CHEEK; PAUL ARMSTRONG CHEEK AND WIFE, MARY KAY CHEEK; MARY C. GUSTAFSON AND HUSBAND, TED GUSTAFSON; ADA HOLLOWAY CHEEK, WIDOW; FRANCES C. CLARK AND HUSBAND, GARY J. CLARK; VERNON R. CHEEK, WIDOWER; VICTOR F. CHEEK AND WIFE, MARGARET P. CHEEK; JOSEPH S. CHEEK AND WIFE, MARY L. CHEEK; WILLARD BURDEN CHEEK AND WIFE, HELEN K. CHEEK; CARY M. EARLY AND WIFE, ELIZABETH H. EARLY; REVAH H. MITCHELL, WIDOW; MARY H. EARLY, WIDOW; W. ENNIS TAYLOE, UNMARRIED; AND A. WOODROW TAYLOE AND WIFE, MARIE TAYLOE; W. C. BURDEN, JR.,

Atkins v. Burden

GUARDIAN AD LITEM FOR GEORGE ALLEN BURDEN, JR. AND
BETTY SMITH SHERROD, RESPONDENTS

No. 766SC553

(Filed 15 December 1976)

1. Wills §§ 35, 36— vested reversion — conveyance prior to death of life
tenant

   Where testator devised land to his son for life with remainder in
the son's children, there was no residuary devise of real estate in the
will, and the son died without children, the testator's will created in
testator's heirs a vested and alienable reversion, though indeterminable
as to size and subject to being divested, and testator's heirs could
convey their reversionary interests by deeds executed prior to the
death of the life tenant.

2. Wills §§ 34, 36— life estate in timber with power of disposition —
reversionary interest

   Where testator's will devised a life estate to his son with the
right to sell or dispose of timber and created a reversion in testator's
heirs, testator's son did not receive a determinable fee in the timber
but received only a life estate with a power of disposition, and a
deed executed by one of testator's heirs prior to the death of the
life tenant conveyed the heir's reversionary interest in the unsold
timber.

3. Wills § 43— devise to son for life — reversion in heirs — exclusion of
son as heir

   Where testator's will devised land to his son for life with remain-
der in the son's children and created a reversion in testator's heirs,
the will indicated an intent to exclude the son from an interest in the
reversion.

APPEAL by respondents, the heirs of W. Clifford Burden,
from *Fountain, Judge.* Judgment entered 18 May 1976 in Su-
perior Court, BERTIE County. Heard in the Court of Appeals 18
November 1976.

This is a special proceeding for a partition sale of certain
lands of William G. Burden who died in 1923, pursuant to the
terms of his will. The will provides the following concerning
the land in question:

"Fourth: I desire my son Worth Burden to have the use,
subject to his mothers dower, of all of my home tract of
land not devised my son H. Vernon Burden in the third
section of this will during his natural life, together with
the right if he so desires to sell off any or all of the timber
thereon and use the proceeds as he sees fit. . . . Fifth: After

the death of my son Worth Burden I give and bequeath to his children, this to include all then living and the issue of any that may have died, in fee simple, the land left to his use in the Fourth section of this will."

There was no residuary devise of real estate in the will. There were eight children of William G. Burden, among them, Worth Burden, who died 26 January 1975 having never had any children, J. A. Burden, and William J. Burden. J. A. Burden died intestate prior to April 20, 1959, being survived by six children, one of whom was W. G. Burden, a grandson of William G. Burden, the testator. W. G. Burden (the son of J. A. Burden) executed a deed dated April 20, 1959, by which he conveyed to Arthur Woodrow Tayloe and W. Ennis Tayloe all of his undivided interest, share, and estate in the land known as the "Sheriff W. G. Burden Home Place," referring to it as the same land as that devised in the will of William G. Burden "to Worth Burden during his natural life and after his death to his children." The said W. G. Burden has filed no answer and made no appearance.

William J. Burden, a son of the testator, died prior to 1959. No contention is made that he disposed of any interest in the William G. Burden home tract by will. He was survived by two children, a daughter, Jessie Burden Pleasants, and a son, W. Clifford Burden.

Jessie Burden Pleasants executed a deed dated June 1, 1959, by which she conveyed to A. Woodrow Tayloe and W. Ennis Tayloe all of her interest in the "Sheriff W. G. Burden Home Place" devised to Worth Burden for his life in the will of William G. Burden. She has neither filed an answer nor made an appearance in this proceeding.

W. Clifford Burden, the son of William J. Burden and a grandson of William G. Burden, the testator, executed a deed dated June 1, 1959, by which he conveyed to A. Woodrow Tayloe and W. Ennis Tayloe all of his interest in the tract of land known as the "Sheriff W. G. Burden Home Place," devised to Worth Burden for life in the will of William G. Burden.

The respondents A. Woodrow Tayloe and W. Ennis Tayloe claim ownership together of a 1/6 undivided interest (1/12 each) in the property, consisting of a 1/14 interest acquired under their deed from W. Clifford Burden, a 1/14 interest

---

Atkins v. Burden

---

acquired under their deed from Jessie B. Pleasants, and a 1/42 interest acquired under their deed from W. G. Burden. The appellants, heirs of W. Clifford Burden, claim that their ancestor's deed was void and conveyed no interest in the property and that they are, collectively, the owners of a 1/14 undivided interest therein.

Pursuant to orders of the court in this proceeding the lands have been sold.

The sales of this property have been confirmed, and the commissioner has received the purchase price. Under orders of the court, he has made certain disbursements for costs and has made a partial distribution to parties whose shares are not in dispute. He has on hand $109,189.49 out of which to pay costs and commissions and from which to make distribution in full to the owners of the disputed shares, when determined, and to complete distribution to the parties whose shares are not in . dispute.

Judge Fountain heard the proceeding at the May 1976 Session of Bertie County Superior Court upon the separate motions of the appellants and appellees for summary judgment, concluded that there were no genuine issues as to any facts upon which ownership of the disputed shares depends, and signed a judgment in favor of the respondents Tayloe. This is an appeal from his judgment by the heirs of W. Clfford Burden.

*Narron, Holdford, Babb & Harrison, by Talmadge L. Narron and R. Woody Harrison, Jr., for appellants.*

*Pritchett, Cooke & Burch, by W. W. Pritchett, Jr., and W. L. Cooke, for the appellee, Commissioner W. L. Cooke.*

*Gillam & Gillam, by M. B. Gillam, Jr., Sarah Starr Gillam, and Lloyd C. Smith, Jr., for appellees Tayloe.*

MARTIN, Judge.

[1]  Appellants contend that the interest held by the heirs of testator during the life estate of Worth Burden was a contingent interest in that it was a mere possibility of a reverter or a reversionary right subject to a condition precedent which would not and did not vest until Worth Burden died leaving no descendants. Thus, they say that even if Clifford Burden could have conveyed his mere expectancy, such expectancy never

vested in him and was extinguished upon his death prior to the date of the life tenant, so that his deed to the Tayloes conveyed nothing. By the fourth item of his will, William G. Burden gave his son, Worth Burden, the use of the land during his natural life. By the fifth item, he gave the land, after the death of Worth Burden, "to his children, this to include all then living and the issue of any that may have died, in fee simple." Worth Burden died intestate and never had any children.

The effect of the will was to give Worth Burden an estate for his life in the land with a remainder to his children, contingent upon there being children. As the contingency never occurred, the remainder was defeated. The will contained no residuary clause as to real estate and made no disposition of the land in question. The residue of the fee simple estate, of which no disposition was made, was a reversion.

Justice Connor, in *Brown v. Guthery*, 190 N.C. 822, 824, 130 S.E. 836, 837 (1925) gave the following definition of a reversion:

"A reversion is defined as the residue of an estate left by operation of law in the grantor of his heirs or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised." (Citations omitted.)

Simes & Smith gives this definition:

"Under modern law, a reversion arises whenever a person having a vested estate transfers to another a lesser vested estate. The interest thus left the transferor is called a reversion." Simes & Smith, Future Interests, *Reversions*, § 82 (2d ed).

Another way of expressing the same thought is that:

"Whenever one owning an estate in lands grants a lesser estate to another there remains in the grantor an interest which is in legal parlance 'reversionary.' " 4A Thompson, Real Property, *Future Interests*, § 1975 (1961 Replacement).

The last mentioned author adds the explanation that:

"A reversion grows out of the legal maxim that whatever a man does not dispose of remains to him and his heirs." 4A Thompson, Real Property, *supra*.

A typical reversion results when a will creates a life estate but does not dispose of the fee in land. There is also a reversion where a will creates a life estate followed by a contingent remainder in fee. Thompson lists as one of the instances in which a reversion occurs "where the grantor creates a life estate." 4A Thompson, Real Property, *supra*. He further says that where a reversion arises under a will and no disposition of the reversion is made, title vests in the testator's heirs. See 4A Thompson, Real Property, *supra*.

In North Carolina, according to the statement of Justice Connor in *Brown v. Guthery*, previously quoted, a reversion may be "left by operation of law in the grantor or his heirs or in the heirs of a testator."

[1]  Under the authorities discussed, when William G. Burden failed to make disposition of the lands in the event that Worth Burden died without children, a reversion was created, which vested in the heirs of William G. Burden. Upon the death intestate of heirs of William G. Burden their interests were transmitted, in turn, to their heirs. Upon the death of Worth Burden without having had children the reversion became possessory.

Testator's will created a life estate followed by a contingent remainder, thereby creating by operation of law a reversion in the testator's heirs of the undisposed portion of the fee, which reversion was capable of being transferred by deed.

> "Vested interests in reversion . . . are everywhere alienable *inter vivos.* . . . No statute has been regarded as necessary to reach this result. The fact that the interest is likely to terminate before it becomes possessory is immaterial, if it is vested. . . . So, too, the fact that the reversion may never take effect . . . does not prevent alienation of the reversion." Simes & Smith, Future Interests, *Inter Vivos Alienation*, § 1856 (2d ed). See also *Jenkins v. Bobbitt*, 77 N.C. 385 (1877).

G.S. 41-4 does not operate to postpone vesting of the reversion until the death of Worth Burden without children because a reversion is not an estate created by limitation in a deed or will but in an estate created by operation of law.

We hold, therefore, that testator's will created in each of testator's heirs living at his death a vested and alienable reversionary interest, though indeterminable as to size and subject

to being divested, and that appellees acquired the reversionary interests of the three grantors of the 1959 deeds and are entitled to their share of the proceeds of the sale.

[2]   Appellants next contend that Worth Burden was given a fee simple in all timber on the lands, determinable at his death as to any timber not sold, with only a possibility of reverter left for the remaindermen or reversioners. Thus, they contend that appellees have no right to a share of the proceeds from the sale of the timber because Clifford Burden had no alienable interest in the timber to convey at the time he executed his deed to appellees. We disagree.

A devise of a life estate with a power to sell or dispose of the property devised does not give the devisee a fee simple determinable but gives him a life estate coupled with a power of disposition. See *Chewning v. Mason,* 158 N.C. 578, 74 S.E. 357 (1912). The existence of a power to sell timber is not inconsistent with the vesting in testator's heirs at the time of his death of a reversion with respect to the undisposed portion of the fee simple estate, including the timber. Thus, appellees did receive an interest in the unsold timber through their deed from Clifford Burden.

[3]   Appellants contend that if the court was correct in its conclusion that a reversionary interest vested in the heirs of testator at testator's death, then the court should also have concluded that Worth Burden was vested with a share of said reversion, whatever it later turned out to be. They contend that since Worth Burden died intestate and without children, his reversionary share should be divided among his heirs, to the exclusion of appellees.

In *White v. Alexander,* 290 N.C. 75, 224 S.E. 2d 617 (1976), the Supreme Court held that the devise of a life estate to a son with the ultimate remainder, taking effect after his death, to the heirs of the testator, demonstrated an intent to exclude the son from any interest in the remainder to his heirs. In the case at bar we hold that the will indicates an intent to exclude Worth Burden from an interest in the reversion.

We have carefully reviewed appellants' other assignments of error and find them to be without merit.

The summary judgment in favor of respondents Tayloe is affirmed.

Judges BRITT and VAUGHN concur.