COUNTY OF LENOIR, CITY OF KINSTON v. WILLIAM H. MOORE, JR., ET AL

No. 928DC1291

(Filed 5 April 1994)

**Taxation §§ 143, 205 (NCI4th) — State lien for unpaid sales taxes — priority of lien for subsequent ad valorem taxes**

A State tax lien for unpaid sales taxes does not have priority over local ad valorem tax liens which arise from a property owner's failure to pay real estate taxes in the years subsequent to the year in which the State tax lien was docketed, notwithstanding the proviso of N.C.G.S. § 105-356(a)(1) stating that the first lien priority for local ad valorem taxes is "[s]ubject to the provisions of the Revenue Act prescribing the priority of the lien for State taxes," since (1) this statute does not refer explicitly to a particular statute in the Revenue Act; (2) local ad valorem tax liens do not qualify as "other recorded specific liens" under the proviso of N.C.G.S. § 105-241 of the Revenue Act which gives priority to properly docketed State tax liens "as against duly recorded mortgages, deeds of trust and other specific liens, as to real estate" when the statutory construction rule of *ejusdem generis* is applied; (3) ad valorem tax liens arise by operation of law; and (4) administrative agencies have recognized the priority of local ad valorem tax liens over State tax liens for many years.

**Am Jur 2d, State and Local Taxation §§ 891 et seq.**

Judge ORR dissenting.

## COUNTY OF LENOIR v. MOORE

[114 N.C. App. 110 (1994)]

Appeal by the North Carolina Department of Revenue from judgment signed 8 September 1992 by Judge J. Patrick Exum in Lenoir County District Court. Heard in the Court of Appeals 28 October 1993.

On 27 August 1991, plaintiffs County of Lenoir and City of Kinston instituted a foreclosure action pursuant to G.S. 105-374 because of the failure of defendant William H. Moore, Jr., to pay local ad valorem taxes for the years 1982 through 1990 on real property located in the City of Kinston in Lenoir County. Several other lienholders claimed an interest in the property and were named as defendants in the complaint. On 4 October 1991, defendant North Carolina Department of Revenue (hereinafter "NCDR") filed its answer, stating that there was a "State tax lien [for State sales taxes owed by Mr. Moore] docketed 26 August 1985 in its favor for $38,787.40 . . . . [T]he lien docketed 26 August 1985, by operation of N.C.G.S. 105-356, 105-242(c), and 105-241 constitutes a first lien and is accorded priority over all subsequent liens by operation of law." Subsequently, defendants United States of America and Sears, Roebuck and Company each filed an answer. The other defendants did not respond to the complaint, and plaintiffs obtained a default judgment against these defendants.

On 5 March 1992, plaintiffs filed a motion for summary judgment pursuant to G.S. 1A-1, Rule 56 against the remaining defendants. On 3 September 1992, defendant NCDR filed a motion for summary judgment. Plaintiffs and defendant NCDR stipulated that there was no genuine issue as to any material fact and that the court should enter summary judgment for one party or the other as a matter of law. Defendant NCDR conceded that any local ad valorem tax lien attaching to Mr. Moore's property prior to 26 August 1985 had priority over the State tax lien. Defendant NCDR contended that the State tax lien had priority over any local ad valorem tax lien attaching to Mr. Moore's property after 26 August 1985. On 8 September 1992, the trial court denied defendant NCDR's motion for summary judgment and granted plaintiffs' motion for summary judgment against defendants NCDR, the United States of America, and Sears Roebuck and Company, holding that plaintiffs had a first and prior lien on the real estate. The trial court further ordered that

[a]ll of the right, title and interest to the real estate of each of the defendants is hereby barred and forever foreclosed,

except as to their right to participate in the distribution of any surplus that may result from the sale herein authorized in accordance with their relative claims thereto, and except as to the right of the United States of America to redeem the real estate within 120 days of the date of the sale as provided in 28 U.S.C. Section 2410(c).

Defendant NCDR appeals.

*Griffin & Griffin, by Robert W. Griffin, for plaintiff-appellees.*

*Attorney General Michael F. Easley, by Associate Attorney General Christopher E. Allen, for defendant-appellant.*

EAGLES, Judge.

Defendant North Carolina Department of Revenue brings forward three assignments of error. After careful consideration of the record and briefs, we affirm.

Defendant NCDR argues that "[t]he trial court erred as a matter of law in awarding summary judgment to plaintiffs and entering its order finding that plaintiffs possessed a first and prior lien on taxpayers' property for tax years 1986 through 1990, thereby barring defendant's interest, because defendant's lien was superior for such years." We disagree.

This case of first impression presents the issue of whether a State tax lien has priority over local ad valorem tax liens which arose from a property owner's failure to pay real estate taxes in the years subsequent to the year in which the State tax lien was docketed. Here, defendant NCDR concedes the priority of the 1982-1985 local ad valorem tax liens. *See* G.S. 105-355(a) ("the lien for taxes levied on a parcel of real property shall attach to the parcel taxed on the date as of which property is to be listed under G.S. 105-285"); G.S. 105-285(a) ("All property subject to ad valorem taxation shall be listed annually"); G.S. 105-285(d) ("The ownership of real property shall be determined annually as of January 1"). However, defendant NCDR asserts that the State tax lien has priority over the 1986-1990 local ad valorem tax liens, which arose subsequent to the docketing of the 26 August 1985 State tax lien.

In discerning our General Assembly's intent, we commence our inquiry with an analysis of the statutory framework within which the issue must be decided. First, we proceed with an ex-

amination of the relevant portions of the Revenue Act, G.S. 105-1-G.S. 105-270, and the Machinery Act, G.S. 105-271-G.S. 105-395.1. In the Machinery Act, G.S. 105-356 provides:

> (a) On Real Property.—The lien of taxes imposed on real and personal property shall attach to real property at the time prescribed in G.S. 105-355(a). The priority of that lien shall be determined in accordance with the following rules:
>
> > (1) Subject to the provisions of the Revenue Act pre-<u>scribing the priority of the lien for State taxes</u>, the lien of taxes imposed under the provisions of this Subchapter shall be superior to all other liens, assessments, charges, rights, and claims of any and every kind in and to the real property to which the lien for taxes attaches regardless of the claimant and regardless of whether acquired prior or subsequent to the attachment of the lien for taxes.
> >
> > (2) The liens of taxes of all taxing units shall be of equal dignity.
> >
> > (3) The priority of the lien for taxes shall not be affected by transfer of title to the real property after the lien has attached, nor shall it be affected by the death, receivership, or bankruptcy of the owner of the real property to which the lien attaches.

G.S. 105-356 (1992) (emphasis added). Defendant NCDR contends that the proviso appearing in G.S. 105-356(a)(1) (underlined *supra*) refers to G.S. 105-241 of the Revenue Act, which at all times relevant to this action provided:

> . . . State, county, and municipal taxes levied for any and all purposes pursuant to this Subchapter shall be for the fiscal year of the State in which they become due, except as otherwise provided, and the lien of such taxes shall attach annually to all real estate of the taxpayer within the State on the date that such taxes are due and payable, and said lien shall continue until such taxes, with any interest, penalty, and costs which shall accrue thereon, shall have been paid. . . .
>
> Provided, however, that the lien of State taxes shall not be enforceable as against bona fide purchasers for value, and <u>as against duly recorded mortgages, deeds of trust and other recorded specific liens</u>, as to real estate, except upon docketing,

COUNTY OF LENOIR v. MOORE

[114 N.C. App. 110 (1994)]

of a certificate of tax liability or a judgment in the office of the clerk of the superior court of the county wherein the real estate is situated, and as to personalty, except upon a levy upon such property under an execution or a tax warrant, and the priority of the State's tax lien against property in the hands of bona fide purchasers for value, and as against duly recorded mortgages, deeds of trust and other recorded specific liens, shall be determined by reference to the date and time of docketing of judgment or certificate of tax liability or the levy under execution or tax warrant. Provided further, that in the event any taxpayer shall execute an assignment for the benefit of creditors, or if receivership, a creditor's bill or other insolvency proceedings are instituted against any taxpayer indebted in the State on account of any taxes levied by the State, the lien of State taxes shall attach to any and all property of such taxpayer or of such insolvent's estate as of the date and time of the execution of the assignment for the benefit of creditors or of the institution of proceedings herein mentioned and shall be subject only to prior recorded specific liens and reasonable costs of administration. Notwithstanding the provisions of this paragraph, the provisions contained in G.S. 105-164.38 shall remain in full force and effect with respect to the lien of sales taxes.

The provisions of this section shall not have the effect of releasing any lien for State taxes imposed by other law, nor shall they have the effect of postponing the payment of the said State taxes or depriving the said State taxes of any priority in order of payment provided in any other statute under which payment of the said taxes may be required.

G.S. 105-241 (1992) (emphasis added). See G.S. 105-242(c).

Priority is the central issue here. The Revenue Act, in G.S. 105-241, affords priority to properly docketed State tax liens "as against duly recorded mortgages, deeds of trust and other recorded specific liens, as to real estate . . . ." Recognizing the well established rule of statutory construction that "[w]hen the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning," *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (citation omitted), we particularly note that this rule is inapplicable

here because the quoted provision of G.S. 105-241, *supra*, makes no express reference to the tax liens of the State's political subdivisions and the proviso in G.S. 105-356(a)(1) fails to refer explicitly to a particular statute in the Revenue Act.

> [W]hen a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, and the courts will interpret the language to give effect to the legislative intent. As this Court said in *State v. Partlow*, 91 N.C. 550 (1884), the legislative intent ". . . is to be ascertained by appropriate means and *indicia*, such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in *pari materia*, the preamble, the title, and other like means. . . ." Other *indicia* considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption, earlier statutes on the same subject, the common law as it was understood at the time of the enactment of the statute, and previous interpretations of the same or similar statutes.
>
> Finally, it is a well settled rule of statutory construction that, where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded. Where possible "the language of a statute will be interpreted so as to avoid an absurd consequence. . . ."

*In Re Banks*, 295 N.C. 236, 239-40, 244 S.E.2d 386, 389 (1978) (citations omitted). Defendant NCDR contends that it is to be presumed that local ad valorem tax liens qualify as "other recorded specific liens" under G.S. 105-241 because of the proviso which appears in G.S. 105-356(a)(1). Initially, we note that although the proviso currently appearing in G.S. 105-356(a)(1) was originally enacted in 1939, *see* 1939 N.C. Public Laws, c. 310, s. 1704(a)(2), N.C. Code of 1939 § 7971(213)(a)(2), G.S. 105-376(a)(2) (Michie 1943), the quoted provision upon which defendant NCDR relies did not exist at that time in G.S. 105-241. (The quoted provision in G.S. 105-241 was not enacted until 1949. *See* 1949 N.C. Sess. Laws, c. 392, s. 6.)

In addressing defendant NCDR's contention, we interpret the general phrase "other recorded specific liens" in relation to the express terms which precede it according to the dictates of *ejusdem generis*, a well established rule of statutory construction providing that " 'where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including *only things of the same kind, character and nature* as those specifically enumerated.' " *State v. Lee*, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970) (citations omitted) (emphasis added). *See also State v. Craig*, 176 N.C. 740, 744, 97 S.E. 400, 401 (1918) ("when particular and specific words or acts, the subject of a statute, are followed by general words, the latter must as a rule be confined to acts and things of the same kind").

Here, the terms immediately preceding the phrase "other recorded specific liens" in G.S. 105-241 are "duly recorded mortgages" and "deeds of trust." These two items giving rise to liens are usually, if not exclusively, obtained by *private* lenders of capital as security for an underlying debt. On the other hand, real property ad valorem taxes are inherently public in character: they are statutorily authorized taxes raised to serve the needs of the community as a whole. *See Saluda v. Polk County*, 207 N.C. 180, 185, 176 S.E. 298, 301 (1934) (distinguishing between "mortgages, deeds of trust, etc., on the property" from "governmental taxes" in interpreting priority under statute). In accordance with the dictates of *ejusdem generis*, we conclude that local ad valorem tax liens do not fall within the scope of "other recorded specific liens" as that phrase is used in G.S. 105-241. *Cf. Davidson County v. City of High Point*, 85 N.C. App. 26, 39-40, 354 S.E.2d 280, 288, *modified and aff'd*, 321 N.C. 252, 362 S.E.2d 553 (1987) (holding that the phrase "trade, industry, residence, or other purposes" as used in G.S. 153A-340 relates to "private property" and the phrase "other purposes" is not to be broadened to include the use of land by a municipality for a public enterprise listed in G.S. 160A-311); *Askew v. Kopp*, 330 S.W.2d 882, 888 (Mo. 1960) (holding that the words "trade, industry, residence or other purposes" relate to private property uses and should not be construed to include governmental uses).

As further support for this interpretation, we particularly note that within the very statute upon which defendant NCDR asserts its right to priority, G.S. 105-241, the first paragraph refers to

certain taxes specifically by name as "county, and municipal taxes," in addition to referring to "the lien of such taxes." Given this degree of specificity found earlier in the statute (G.S. 105-241) and the principles of *ejusdem generis*, we conclude that the General Assembly did not intend to include liens for local ad valorem taxes, a critical source of county and municipal revenue, as part of the items falling within the catchall phrase "other recorded specific liens" in G.S. 105-241. Additionally, we note that in the Machinery Act our General Assembly has expressly recognized the "first lien" priority to be afforded local ad valorem tax liens by its recommended wording of documents entitled "orders of collection" which are issued under seal by local governing bodies:

> Before delivering the tax receipts to the tax collector in any year, the board of county commissioners or municipal governing body shall adopt and enter in its minutes an order directing the tax collector to collect the taxes charged in the tax records and receipts. A copy of this order shall be delivered to the tax collector at the time the tax receipts are delivered to him, but the failure to do so shall not affect the tax collector's rights and duties to employ the means of collecting taxes provided by this Subchapter. The order of collection shall have the force and effect of a judgment and execution against the taxpayers' real and personal property and shall be drawn in substantially the following form:

State of North Carolina

County (or City or Town) of............................

To the Tax Collector of the County (or City or Town) of ................:

> You are hereby authorized, empowered, and commanded to collect the taxes set forth in the tax records filed in the office of .......... and in the tax receipts herewith delivered to you, in the amounts and from the taxpayers likewise therein set forth. Such taxes are hereby declared to be a first lien upon all real property of the respective taxpayers in the County (or City or Town) of .............., and this order shall be a full and sufficient authority to direct, require, and enable you to levy on and sell any real or personal property of such taxpayers, for and on account thereof, in accordance with law.

Witness my hand and official seal, this . . . . . day of
. . . . . . . . . . . . ., 19. . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)

Chairman, Board of Commissioners of
. . . . . . . . . . . . . . . . . County

(Mayor, City (or Town) of . . . . . . . . .)

Attest:

. . . . . . . . . . . . . . . . . . .

Clerk of Board of Commissioners of . . . . . . . . . . . . County (Clerk
of the City (or Town) of . . . . . . . . . . . .)

G.S. 105-321(b) (1992) (emphasis added). *See also* N.C. Code of 1939
§ 7971(158); G.S. 105-325 (Michie 1943). G.S. 105-321(b), *supra,* is
the *only* statute in Chapter 105 in which the phrase "first lien"
appears.

We find further support for our holding by virtue of the very
nature of local ad valorem tax liens, which arise simply by operation
of law, without any other action by the taxing authority. *See general-
ly, Black's Law Dictionary, Sixth Ed.* 1092 (West 1990) (defining
the term "operation of law" as "the manner in which rights, and
sometimes liabilities, devolve upon a person by the mere application
to the particular transaction of the established rules of law, without
the act or co-operation of the party himself"); *cf. Bowen v. Darden,*
241 N.C. 11, 13, 84 S.E.2d 289, 291 (1954) ("a trust by operation
of law is raised by rule or presumption of law based on acts or
conduct, rather than on direct expression of intention"); *Carpenter
v. Tony E. Hawley, Contractors,* 53 N.C. App. 715, 721, 281 S.E.2d
783, 787, *disc. review denied and appeal dismissed,* 304 N.C. 587,
289 S.E.2d 564 (1981); *Atkins v. Burden,* 31 N.C. App. 660, 665,
230 S.E.2d 594, 597 (1976), *disc. review denied,* 291 N.C. 710, 232
S.E.2d 202 (1977); *Brown v. Guthery,* 190 N.C. 822, 824, 130 S.E.
836, 837 (1925). Unlike the State tax lien presented here, a local
ad valorem tax lien arises as of the date the real property is
*listed. Service Co. v. Dunford,* 18 N.C. App. 641, 643, 197 S.E.2d
626, 628 (1973); G.S. 105-355(a); G.S. 105-356(a); G.S. 105-285. *Com-
pare* G.S. 105-241 (necessity of *docketing* a certificate of tax liability
or a judgment as a prerequisite to the enforceability of State tax
lien); G.S. 105-242(c) ("said tax shall become a lien on realty only
from the date of the docketing of such certificate in the office

of the clerk of the superior court"). *See generally, Sykes v. Clayton, Comr. of Revenue*, 274 N.C. 398, 403-04, 163 S.E.2d 775, 779 (1968) (distinguishing between real property ad valorem taxes and sales taxes); *Williams v. General Finance Corp. of Atlanta*, 98 Ga. App. 31, 35, 104 S.E.2d 649, 653 (1958).

In sum, notwithstanding G.S. 105-356's proviso stating "[s]ubject to the provisions of the Revenue Act prescribing the priority of the lien for State taxes," we hold that a local ad valorem tax lien is superior to *all* other liens, including State tax liens, "regardless of the claimant and regardless of whether acquired prior or subsequent to the attachment of the lien for taxes." G.S. 105-356(a)(1). *See generally Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975) ("where a literal reading of a statute 'will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded' " (citation omitted) ); *In Re Mitchell-Carolina Corp.*, 67 N.C. App. 450, 452-53, 313 S.E.2d 816, 818, *disc. review denied*, 311 N.C. 401, 319 S.E.2d 272 (1984). In the absence of specific statutory language, we will not engraft upon G.S. 105-241 and G.S. 105-356 an undue restriction defeating the priority of local ad valorem tax liens. *Lockwood v. McCaskill*, 261 N.C. 754, 758, 136 S.E.2d 67, 69 (1964) (" 'A proviso should be construed together with the enacting clause or body of the act, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act and acts *in pari materia*. A strict but reasonable construction is to be given to the proviso so as to take out of the enacting clause only those cases which are fairly within the terms of the proviso.' 82 C.J.S., Statutes 381(b)(1)"); *Robbins v. Charlotte*, 241 N.C. 197, 200, 84 S.E.2d 814, 816-17 (1954).

Finally, plaintiffs argue that "[a]t trial defendant [NCDR] further conceded that the State had always conceded that local property taxes were entitled to first priority, at least since Chapter 105 (Taxation) (G.S. 105-1 *et seq.*) was written in the 1930's." Defendant NCDR has failed to refute this contention. Our Supreme Court has stated that "[a]n administrative interpretation of a tax statute which has continued over a long period of time with the silent acquiescence of the Legislature should be given consideration in the construction of the statute." *Yacht Co. v. High, Commissioner of Revenue*, 265 N.C. 653, 658, 144 S.E.2d 821, 825 (1965) (*citing Knitting Mills v. Gill*, 228 N.C. 764, 47 S.E.2d 240 (1948) ). *See*

*also Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E.2d 324 (1978); *MacPherson v. City of Asheville*, 283 N.C. 299, 196 S.E.2d 200 (1973). Given our application of the rules of statutory construction, our interpretation of legislative intent, and the historical administrative interpretation of G.S. 105-241 and G.S. 105-356 spanning over one-half of a century, we conclude that if State tax liens are to receive priority over local ad valorem tax liens, there must be an express amendment to the statutes by our General Assembly.

Accordingly, we affirm the trial court's 8 September 1992 judgment.

Affirmed.

Judge COZORT concurs.

Judge ORR dissents.

Judge ORR dissenting.

The issue before this Court is whether a county's or municipality's ad valorem tax lien arising under the Machinery Act has priority over a docketed State tax lien on the same real property arising under the Revenue Act as a matter of law. While the majority presents a compelling argument to support plaintiffs' position in this case, I must respectfully dissent on the grounds that the legislative language and intent is clear.

"The law governing statutory construction is well-settled. When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984). "Where words in a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning." *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984).

The purpose of the Machinery Act, N.C. Gen. Stat. § 105-271 to -395.1, "is to provide the machinery for the listing, appraisal, and assessment of property and the levy and collection of taxes on property by counties and municipalities." N.C. Gen. Stat. § 105-272. Pursuant to N.C. Gen. Stat. § 105-355(a):

COUNTY OF LENOIR v. MOORE

[114 N.C. App. 110 (1994)]

Regardless of the time at which liability for a tax for a given fiscal year may arise or the exact amount thereof be determined, the lien for taxes levied on a parcel of real property *shall attach to the parcel taxed on the date as of which property is to be listed under G.S. 105-285* . . . .

(Emphasis added.) Under N.C. Gen. Stat. § 105-285, "All property subject to ad valorem taxation shall be listed annually." Under the Machinery Act, therefore, ad valorem tax liens attach to the parcel taxed on the date the property is listed, which property must be listed annually. Thus, on the date the property is listed, an ad valorem tax lien against the property arises by operation of law, and a taxing unit may bring a foreclosure action pursuant to N.C. Gen. Stat. § 105-374.

In order to determine the effect enforcement of ad valorem tax liens has on other liens on the property, N.C. Gen. Stat. § 105-356 sets out the priority of tax liens arising under the Machinery Act. N.C. Gen. Stat. § 105-356 states:

(a) On Real Property.—The lien of taxes imposed on real and personal property shall attach to real property at the time prescribed in G.S. 105-355(a). The priority of that lien shall be determined in accordance with the following rules:

(1) *Subject to the provisions of the Revenue Act prescribing the priority of the lien for State taxes*, the lien of taxes imposed under the provisions of this Subchapter shall be superior to *all other liens, assessments, charges, rights, and claims of any and every kind in and to the real property to which the lien for taxes attaches regardless of the claimant and regardless of whether acquired prior or subsequent to the attachment of the lien for taxes.*

. . . .

(Emphasis added.) Thus, pursuant to the plain language of N.C. Gen. Stat. § 105-356, the rule of priority for ad valorem tax liens is that once an ad valorem tax lien arising under the Machinery Act attaches to real property, this lien has priority over *all other liens* on the real property, regardless of whether the other liens were acquired prior to or subsequent to the attachment of the ad valorem tax lien. This rule is, however, "subject to" the provisions of the Revenue Act prescribing priority of State tax liens.

COUNTY OF LENOIR v. MOORE

[114 N.C. App. 110 (1994)]

N.C. Gen. Stat. § 105-241 is the only provision of the Revenue Act which prescribes the priority of State tax liens. At the time of this action, N.C. Gen. Stat. § 105-241 stated:

State, county, and municipal taxes levied for any and all purposes pursuant to this Subchapter shall be for the fiscal year of the State in which they become due, except as otherwise provided, and the lien of such taxes shall attach annually to all real estate of the taxpayer within the State on the date that such taxes are due and payable . . . .

Provided, however, that the lien of State taxes shall not be enforceable as against bona fide purchasers for value, and *as against duly recorded mortgages, deeds of.trust and other recorded specific liens, as to real estate, except upon docketing of a certificate of tax liability or a judgment in the office of the clerk of the superior court of the county wherein the real estate is situated,* and as to personalty, except upon a levy upon such property under an execution or a tax warrant, *and the priority of the State's tax lien against property* in the hands of bona fide purchasers for value, and *as against duly recorded mortgages, deeds of trust and other recorded specific liens,* shall be determined by reference to the date and time of docketing of judgment or certificate of tax liability or the levy under execution or tax warrant.

(Emphasis added.) (Amendment effective 1 August 1993 rewrote this statute.) As to priority solely over other liens, by the plain language of N.C. Gen Stat. § 105-241, at the time of this action, the Revenue Act gave docketed State tax liens priority over "duly recorded mortgages, deeds of trust and other recorded specific liens" that are recorded after the date and time the State tax lien was docketed.

Ad valorem tax liens are not classified as "deeds of trust" or "recorded mortgages." Thus, in order to determine whether docketed State tax liens have priority over ad valorem tax liens it must be determined whether the Legislature intended to include ad valorem tax liens in the term "other recorded specific liens" under the Revenue Act. Ad valorem tax liens, as counsel for plaintiffs concedes, are specific liens; thus, the sole issue is whether the Legislature intended to classify ad valorem tax liens as "recorded" liens under the Revenue Act.

Black's Law Dictionary defines "record", "[t]o commit to writing," "to make an official note of, to write, transcribe, or enter in a book or on parchment, for the purpose of preserving authentic evidence of . . . ." The American Heritage Dictionary defines "record", "[t]o register or indicate."

Chapter 105 of the General Statutes requires that each year, every county and tax-levying municipality prepare a record containing the total assessed value of each taxpayer's real property listed for taxation and the ad valorem taxes due on such property. Pursuant to N.C. Gen. Stat. § 105-319 (1992):

> (a) For each year there *shall* be prepared for each county and tax-levying municipality a scroll (showing property valuations) and a tax book (showing the amount of taxes due) or a combined record (showing both property valuation and taxes due). . . .
>
> . . .
>
> (c) The tax records *shall* show at least the following information:
>
> > . . .
> >
> > (4) The total assessed value of each taxpayer's real . . . property listed for unit-wide purposes.
> >
> > (5) The amount of *ad valorem tax due* by each taxpayer for unit-wide purposes.
> >
> > . . .
> >
> > (7) The total assessed value of each taxpayer's real . . . property listed for taxation in any special district or subdivision of the unit.
> >
> > (8) The amount of *ad valorem tax due* by each taxpayer to any special district or subdivision of the unit.

(Emphasis added.) Further, the "[c]ounty tax records shall be filed in the office of the assessor unless the board of county commissioners shall require them to be filed in some other *public* office of the county. City and town tax records shall be filed in some

*public* office of the municipality designated by the governing body of the city or town." N.C. Gen. Stat. § 105-321(a) (1992) (emphasis added). Under this subchapter, "tax records" means "the scroll, tax book, and combined record." N.C. Gen. Stat. § 105-319(a) (1992).

Thus, although the ad valorem tax lien arises by operation of law, the county or municipality where the real property is listed must keep a yearly written record of the amount of ad valorem taxes due on such property, and this record must be filed with a public office so that the amount of ad valorem taxes due on the real property is public knowledge. The fact that the ad valorem tax lien arises by operation of law does not negate the fact that the amount of the lien is a matter of public record. I believe that this written indication of the ad valorem tax due on the property is sufficient to classify these taxes as "recorded" taxes and that the Legislature intended for ad valorem tax liens to be classified as "other recorded specific liens."

Further, if the Legislature did not intend to include ad valorem tax liens under the language, "other recorded specific liens," then the language found in the Machinery Act stating that the priority of ad valorem tax liens is "subject to" the provisions of the Revenue Act prescribing State tax lien priority would be "empty" in its application. "The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms." *Domestic Elec. Service, Inc. v. City of Rocky Mount*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974).

Thus, I would conclude that docketed State tax liens have priority over ad valorem tax liens that attach to the property subsequent to the date of docketing of the State tax lien. *See* N.C. Gen. Stat. § 105-241 (1992).

In the present case, NCDR's lien is a docketed State tax lien arising under the Revenue Act, and plaintiffs' lien at issue is for ad valorem taxes due on the same property attaching after the date NCDR's lien was docketed. I would conclude that NCDR's duly docketed State tax lien has priority over the ad valorem taxes that attached to the property subsequent to the docketing of NCDR's lien as a matter of law.

While plaintiffs have ably argued, and the majority finds support for, the practical reasons sustaining plaintiffs' position, including the practice over many years of giving the ad valorem

tax liens priority, those arguments and changes should be addressed by the Legislature. Accordingly, I would reverse the order of the trial court granting plaintiffs' motion for summary judgment and remand this case for entry of judgment for the defendants.