RANKIN WHITTINGTON, DANIEL C. HUDGINS, DR. TAKEY CRIST, DR. GWENDOLYN BOYD AND PLANNED PARENTHOOD OF GREATER CHARLOTTE, INC., PLAINTIFFS v. THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DAVID FLAHERTY, IN HIS CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, THE NORTH CAROLINA SOCIAL SERVICES COMMISSION, AND C. BARRY McCARTY, IN HIS CAPACITY AS CHAIRPERSON OF THE NORTH CAROLINA SOCIAL SERVICES COMMISSION, DEFENDANTS

No. 8910SC405

(Filed 20 November 1990)

**Administrative Law and Procedure § 10 (NCI4th) — State Abortion Fund — Social Services Commission — rule-making authority**

The trial court did not err by granting summary judgment for plaintiffs in an action seeking a declaratory judgment and an injunction against defendants enjoining enforcement of rules adopted by the Social Services Commission requiring directors of county social service departments to report any allegations of rape or incest and to offer each woman who applies for funds for an abortion the opportunity to personally view models showing birth and development of the human embryo and fetus. Defendants as a matter of law do not have specific or implied authority to promulgate rules such as these. Since the rules in question were adopted by the Commission subsequent to the enactment of N.C.G.S. § 150B-9, they are subject to the specific requirements of that statute that rules be adopted in accordance with procedures specified in the article and that agencies are prohibited from adopting any rule implementing or interpreting any statute or other legislative enactment unless specifically authorized to do so in the enactment. There is no grant of authority from which the court could infer any rule-making authority pursuant to the legislation authorizing the State Abortion Fund.

**Am Jur 2d, Administrative Law §§ 92, 95, 96; Welfare Laws § 72.6.**

APPEAL by defendants from judgment entered 8 December 1988 by *Judge Craig B. Ellis* in WAKE County Superior Court. Heard in the Court of Appeals 14 November 1989.

On 1 June 1987, plaintiffs filed this action seeking a declaratory judgment and an injunction against defendants alleging, *inter alia,*

in its first and fourth claims, that on 31 October 1986, the Social Services Commission adopted two rules pursuant to the legislation authorizing the State Abortion Fund (1985 N.C. Sess. Laws c. 479 s. 93) (hereinafter the Fund), which exceed the administrative authority of the Social Services Commission, and therefore, are *ultra vires*. According to plaintiffs, these rules require them and all other directors of county social services departments to: (a) offer each woman who applies for funds for an abortion under the Fund an opportunity to personally view fetal models showing growth and development of the human embryo and fetus, and (b) report any allegations of rape or incest when a woman who applies for assistance from the Fund alleges rape or incest in her application.

Plaintiffs moved for a preliminary injunction on 11 June 1987 to enjoin enforcement of the rules. The trial court granted the preliminary injunction on 1 July 1987 and denied defendants' motion to dismiss.

On 24 October 1988, plaintiffs filed a motion for partial summary judgment on their first and fourth claims for relief. The trial court heard this motion on 9 November 1988 and considered the evidence of record, the briefs and arguments. The trial court then concluded that there were no material facts in dispute and that the two rules in question were "*ultra vires* and beyond the scope of the administrative authority of the Social Services Commission as a matter of law."

Further, the trial court found that based upon its findings, there was no need to consider plaintiffs' other claims for relief. It enjoined defendants' enforcement of the rules and awarded plaintiffs costs in the action. The trial court entered judgment accordingly on 8 December 1988. Defendants appeal from the order of 8 December 1988 granting summary judgment in favor of plaintiffs.

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by Leslie J. Winner and Thomas M. Stern, for plaintiff-appellees.*

*Maupin Taylor Ellis & Adams, P.A., by Charles B. Neely, Jr. and Robert A. Cohen, for defendant-appellants.*

ORR, Judge.

We begin by noting that although this case arises in the context of controversial regulations pertaining to state funded abortions, this case is not about abortions. Rather, it is a case solely

about administrative rule-making authority and whether the trial court erred in granting summary judgment in favor of plaintiffs in regard to that question. For the reasons below, we find that the trial court did not err.

Under N.C. Gen. Stat. § 1A-1, Rule 56(c) (1983), summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that any party is entitled to a judgment as a matter of law." Under the rule, a party is entitled to summary judgment if it can establish through the pleadings and affidavits, that there is no genuine issue as to any material fact, that only issues of law remain and that it is entitled to judgment as a matter of law. *Hagler v. Hagler*, 319 N.C. 287, 354 S.E.2d 228 (1987); *Johnson v. Holbrook*, 77 N.C. App. 485, 335 S.E.2d 53 (1985).

In its judgment after the hearing on the summary judgment motion, the trial court concluded that "there are no material facts in dispute that are necessary to determine these claims and [these rules] . . . are each *ultra vires* and beyond the scope of the administrative authority of the Social Services Commission as a matter of law."

The following are the rules in issue:

Counseling required by Chapter 479, Section 93(5) of the 1985 Session Laws shall include the opportunity, but not the requirement, for all persons determined eligible for service to personally view fetal models showing the growth and development of the human embryo and fetus, said models to be obtained from regular medical supply houses or medical schools.

The director of any county department of social services receiving information from an applicant for State Abortion Funds alleging rape or incest as a basis for eligibility for assistance from the fund shall report such incident of rape or incest to the district attorney having jurisdiction in the area in which the incident occurred.

Rule 10 N.C.A.C. 42W .0003(c) and .0005 (hereinafter referred to as "the fetal model rule" and "the reporting rule"). The reporting rule has been interpreted by the Social Services Division to require the director of each county department of social services to report

only the fact that the rape or incest incident occurred and may exclude details of the incident and the victim's name.

Before addressing the specific statutory provisions upon which the parties rely to support their opposing positions, we must first set out the following general rules regarding statutory construction. As early as 1915, our Supreme Court stated that when construing a statutory provision, the words in the statute are to be given their natural or ordinary meaning, unless the context of the provision indicates that they should be interpreted differently. *Abernathy v. Commissioners*, 169 N.C. 631, 86 S.E. 577 (1915). Moreover, when one statute speaks directly and in detail to a particular situation, that direct, detailed statute will be construed as controlling other general statutes regarding that particular situation, absent clear legislative intent to the contrary. *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E.2d 582 (1966).

It is only when the language of a statute is unclear or ambiguous that a court should attempt to interpret the language of a statute in accordance with what the court presumed the Legislature intended. *State v. White*, 58 N.C. App. 558, 294 S.E.2d 1 (1982). In enacting a law, we must presume that the Legislature acted with full knowledge of prior and existing law. *State v. Benton*, 276 N.C. 641, 174 S.E.2d 793 (1970). Finally, statutes relating to the same subject should be construed *in para materia*, in such a way as to give effect, if possible, to all provisions without destroying the meaning of the statutes involved. *See State ex rel. Utilities Comm. v. Thornburg*, 84 N.C. App. 482, 353 S.E.2d 413, *disc. review denied*, 320 N.C. 517, 358 S.E.2d 533 (1987).

We first note that the broad general rule-making authority in the executive branch of government for matters relating to human resources is found in Article 3 of Chapter 143B of the General Statutes known as the Executive Organization Act of 1973. Within this article, there is a specific legislative grant of rule-making authority to the Social Services Commission in N.C. Gen. Stat. § 143B-153 which states in pertinent part:

> There is hereby created the Social Services Commission of the Department of Human Resources with the power and duty to adopt rules and regulations to be followed in the conduct of the State's social service programs with the power and duty to adopt, amend, and rescind rules and regulations under and not inconsistent with the laws of the State necessary

to carry out the provisions and purposes of this Article. Provided, however, the Department of Human Resources shall have the power and duty to adopt rules and regulations to be followed in the conduct of the State's medical assistance program.

> (1) The Social Services Commission is authorized and empowered to adopt such rules and regulations that may be necessary and desirable for the programs administered by the Department of Human Resources as provided in Chapter 108A of the General Statutes of North Carolina.

N.C. Gen. Stat. § 143B-153 (1987). Pursuant to that authority, over the course of years, the Social Services Commission has made numerous rules and regulations covering the gamut of programs within its scope of services.

Beginning in 1978, the General Assembly began providing limited appropriations for state funded abortions. 1977 N.C. Sess. Laws 2d Sess. c. 1136. No specific legislation pertaining to this program was enacted other than the line item budget provisions enacted in the spending legislation passed by the General Assembly. In the 1985 Session Laws, Chapter 479, Section 93, the General Assembly for the first time enacted specific legislation dealing with the operation of the State Abortion Fund and the legislative policies applying to it.

Section 93 states in pertinent part:

LIMITATIONS ON STATE ABORTION FUND

Sec. 93.

(1) It shall be the policy of the State of North Carolina that the State Abortion Fund shall not be available for abortion on demand but shall be limited in accordance with this section.

. . .

No rules adopted pursuant to this section may require a woman to report rape or incest within any specified time.

(4) Responsibilities of the County Department of Social Services. Services provided under this section shall be administered uniformly in every political subdivision of the State.

Applications for service shall be made to county departments of social services.

Eligibility for the services under this section shall be determined by the county department of social services under the provisions of subdivision (3) of this section. The county department of social services shall arrange for the delivery of these services with appropriate medical providers.

(5) Counseling and Referral Services. The county department of social services shall provide counseling to all persons determined eligible for service under this section. Counseling shall include discussion of pregnancy options, including adopting, and family planning information.

. . .

The county department of social services shall provide to all persons determined eligible under this provision family planning counseling, and referral for family planning consultation and supplies, or voluntary sterilization.

In cases where the applicant chooses to carry the pregnancy to term, the county department of social services shall refer the individual for all appropriate services, including licensed adoption services, maternal health care services and financial assistance.

(6) Reimbursement to Providers. Services shall be reimbursed at no less than one hundred fifty dollars ($150.00) for outpatient services and not more than five hundred dollars ($500.00) for inpatient services.

No services may be reimbursed where federal funds are available.

Providers receiving funds under this section may not collect additional funds from individuals receiving services.

Notwithstanding any provision of law, the setting of rates or fees for such services; the setting of eligibility standards or application requirements; the determination of the components of income that are considered in computing family monthly gross income; designation of services to be provided or the designation of providers shall be done only by enactment of law by the General Assembly. For purposes of administering

this section, the following regulations which are codified in the North Carolina Administrative Code, to the extent that they are consistent with this section, are specifically authorized by the General Assembly: 10 NCAC 42W .0001 — .0003, which were filed and effective as of January 1, 1983; 10 NCAC 35E .0103, Income Eligible Status, which was filed and effective as of July 1, 1983; and 10 NCAC 35 .0003, including the referenced Family Services Manual.

1985 N.C. Sess. Laws c. 479 s. 93.

Finally, in 1985, the General Assembly passed a new Administrative Procedures Act codified in N.C. Gen. Stat. § 150B. This provision states in pertinent part:

**§ 150B-1. Policy and scope.**

(a) The policy of the State is that the three powers of government, legislative, executive, and judicial, are, and should remain, separate. The intent of this Chapter is to prevent the commingling of those powers in any administrative agency and to ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process.

(b) The purpose of this Chapter is to establish as nearly as possible a uniform system of administrative rule making and adjudicatory procedures for State agencies.

(c) This Chapter shall apply to every agency, as defined in G.S. 150B-2(1), except to the extent and in the particulars that any statute, including subsection (d) of this section, makes specific provisions to the contrary.

N.C. Gen. Stat. § 150B-1 (1987). The Social Services Commission was not excluded from coverage under subsection (d).

While the specific issue before this Court is the appropriateness of the trial court's grant of summary judgment for the defendants, the underlying basic issue is the applicability of these various legislative enactments to the rules in question. We turn now to the specific contentions of the parties.

*Defendants' Contentions*

Defendants primarily contend that the rules adopted by the Social Services Commission are authorized specifically under N.C.

Gen. Stat. § 143B *et seq.*, and that these provisions create express general authority in the Social Services Commission of the Department of Human Resources to adopt rules and regulations pertaining to the Fund. Defendants further argue that *Stam v. State*, 47 N.C. App. 209, 267 S.E.2d 335 (1980), *aff'd in part and rev'd in part*, 302 N.C. 357, 275 S.E.2d 439 (1981), supports their authority to regulate the Fund through the adoption of rules. In addition, defendants contend that they have the implied authority to make such rules because administrative authority should be broadly construed.

Defendants rely on the broad grant of authority of N.C. Gen. Stat. § 143B-137 and the specific grant of § 143B-153 wherein the Social Services Commission is created "with the power and duty to adopt rules and regulations to be followed in the conduct of the State's social service programs with the power and duty to adopt, amend, and rescind rules and regulations under and not inconsistent with the laws of the State . . . ."

Defendants further rely on *Stam* for the proposition that pursuant to Chapter 143B, the Commission has rule-making authority as it pertains to the State Abortion Fund. To this point at least, defendants' contentions are correct and the Social Services Commission is authorized by virtue of Chapter 143B, standing alone, and specifically authorized as to the State Abortion Fund by *Stam* to promulgate rules that are "necessary and desirable."

### Plaintiffs' Contentions

The primary contention advocated by the plaintiffs is that the enactment of N.C. Gen. Stat. § 150B-9 limited the rule-making authority of North Carolina administrative agencies such as the Social Services Commission. This statute, as noted previously, was part of the revised Administrative Procedure Act of 1985. Section 150B-9 (effective 12 July 1985) states:

(a) It is the intent of this Article to establish basic minimum procedural requirements for the adoption, amendment, or repeal of administrative rules. . . . [T]he provisions of this Article are applicable to the exercise of any rule-making authority conferred by any statute, but nothing in this Article repeals or diminishes additional requirements imposed by law or any summary power granted by law to the State or any State

agency. *No rule hereafter adopted is valid unless adopted in substantial compliance with this Article.*

(b) Each agency shall adopt, amend, suspend or repeal its rules in accordance with the procedures specified in this Article and pursuant to authority delegated by law and in full compliance with its duties and obligations. *No agency may adopt any rule that implements or interprets any statute or other legislative enactment unless the power, duty, or authority to carry out the provisions of the statute or enactment is specifically conferred on the agency in the enactment, . . . .*

N.C. Gen. Stat. § 150B-9 (1987) (emphasis added).

Plaintiffs argue that general provisions of §§ 143B-153 and 108A-71 must yield to the specific provisions of § 150B-9 and Section 93. Furthermore, plaintiffs argue that *Stam* is inapplicable to the case at bar because it does not support the proposition that the Social Services Commission *currently* has authority to enact rules concerning the State Abortion Fund.

We must now decide whether any of the above statutes or provisions grant to the Social Services Commission the specific or implied authority to adopt the fetal model and reporting rule pursuant to the Fund. We hold that they do not.

### a. *Specific Authority*

Since the rules in question were adopted by the Commission subsequent to the enactment of N.C. Gen. Stat. § 150B-9, they are subject to the specific requirements. The first such requirement under § 150B-9(b) is that they be adopted in accordance with procedures specified in the article. On this count, the Commission failed to comply.

Secondly, the Commission is prohibited from adopting any rule implementing or interpreting *any* statute or *other* legislative enactment unless specifically authorized to do so in the enactment.

We now turn to Section 93 wherein the Legislature specifically enacted certain limitations on the State Abortion Fund. There is nothing in Section 93 which specifically confers upon the Social Services Commission or any other designated entity rule-making authority; however, the Legislature did specifically authorize for purposes of administering the section certain regulations previously codified. The language tracks the requirements of Chapter 150B.

Although there are references to certain limitations on "Rules adopted pursuant to this section . . .," we cannot conclude that Section 93 references a specific grant of rule-making authority to any particular entity.

In fact, Section 93 specifically reserves the right to make such rules to the General Assembly.

> Notwithstanding any provision of law, . . . *designation of services to be provided or the designation of providers shall be done only by enactment of law by the General Assembly.* For purposes of administering this section, the following regulations which are codified in the North Carolina Administrative Code, to the extent that they are consistent with this section, are specifically authorized by the General Assembly: 10 NCAC 42W .0001-.0003, . . . 10 NCAE 35 .0103, . . ., and 10 NCAC 35 .0003, which were filed and effective as of January 1, 1983;
> . . . .

1985 N.C. Sess. Laws c. 479, s. 93 (emphasis added).

In summary, we conclude that the Commission has and continues to have general rule-making authority under its grant in N.C. Gen. Stat. § 143B-153 and by the provision of N.C. Gen. Stat. § 108A-71 which authorizes the Department of Human Resources to accept all "State appropriations" for programs of social services. That grant became limited, however, by Chapter 150B upon its enactment, thereby requiring the Commission to comply with certain procedural requirements in adopting rules if specifically authorized by legislative enactment to adopt rules. We also note that any rules made pursuant to Chapter 143B must be "[consistent] with the laws of the state." N.C. Gen. Stat. § 143B-153.

Since the State Abortion Fund prior to the enactment of Section 93 was merely a "state appropriation," the Department of Human Resources, through its Social Services Commission, could and did enact rules and regulations pertaining to the program. However, by the passage of Section 93, which specifically limits by legislative enactment, how the Fund is to be administered, the Department of Human Resources and the Commission's rule-making authority must comply with the requirements of Chapter 150B.

We make no ruling on whether the rules in question are, in fact, "necessary and desirable" under § 143B-153. Furthermore,

for the purposes of this opinion, we do not need to make a determination of whether the Fund is a grant-in-aid under Chapter 108A.

We also note that defendants are correct in their analysis of the *Stam* case to the extent that *Stam* interpreted § 143B-153(7) to grant rule-making authority to the Commission to adopt "rules and regulations consistent with the provisions of this Chapter," as well as the specific grants of power in subsections (1) through (6). 47 N.C. App. at 220, 267 S.E.2d at 343. However, *Stam* does not authorize the Social Services Commission to make such rules if they are inconsistent with other more specific statutes such as § 150B-9.

Defendants argue in their reply brief that § 150B-9 should not apply to the rules in question because this statute became effective 12 days after Section 93. Therefore, the General Assembly had no reason to specifically confer the authority in the enactment of Section 93 to carry out the provisions of that section since § 150B-9 was not yet law. This argument is without merit for at least two reasons.

First, Section 93 specifically reserves the right of designation of services under the Fund to the General Assembly. Had the Legislature desired to carve an exception under any of the subsections to permit the Social Services Commission to promulgate rules, it could have done so. The Legislature did this for certain other rules in its last sentence of Section 93 by allowing some that already had been promulgated and codified in the North Carolina Administrative Code. Had the Legislature intended to leave room for additional future rules, such as the rules in the present case, it could have done so.

Second, although § 150B-9 was enacted after Section 93, the General Assembly has had additional opportunities to confer specific rule-making authority on the Social Services Commission in Section 93, and has failed to do so. The Legislature failed to grant such authority to the Social Services Commission in 1987, and twice in 1989.

Moreover, the Social Services Commission promulgated the rules in question *after* § 150B-9 became effective. Therefore, § 150B-9 does not operate retroactively in the case *sub judice*.

b. *Implied Authority*

Defendants argue that the administrative authority of an agency is to be broadly construed, consistent with the modern trend to permit administrative agencies reasonable discretion to carry out their charter purposes. *See Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 269 S.E.2d 547, *reh'g denied,* 301 N.C. 107, 273 S.E.2d 300 (1980). We find this proposition to be inapplicable to the case at bar.

First, the General Statutes of the state must justify any authority which administrative agencies purport to exercise. *Insurance Co. v. Lanier, Comr. of Insurance,* 16 N.C. App. 381, 384, 192 S.E.2d 57, 59 (1972). There is no such justification from the General Statutes in the case at bar.

Second, in *General Motors Corp. v. Kinlaw,* 78 N.C. App. 521, 338 S.E.2d 114 (1985), this Court stated that administrative agencies have those powers expressly vested by statute, and "those [implied] powers reasonably necessary for the agency to function properly. . . ." *Id.* at 530, 338 S.E.2d at 121. In our case, there is no such grant of authority from which we may infer any rule-making authority pursuant to the legislation authorizing the Fund.

Finally, because Section 93 and N.C. Gen. Stat. § 150B-9 prohibit the Social Services Commission from promulgating rules such as the fetal model and reporting rule, there is no implicit authority for the Commission to make and enforce such rules in these or other statutes.

We find that § 150B-9 and Section 93 speak directly to the rule-making authority of the Social Services Commission in the case *sub judice,* and we must, under the laws of this State, construe those provisions as controlling. We find no clear legislative intent to the contrary. *See Food Stores v. Board of Alcoholic Control,* 268 N.C. 624, 151 S.E.2d 582 (1966). Furthermore, we note that it is the Legislature's obligation to clarify its intent should it deem such clarification to be necessary.

In summary, we hold that the trial court did not err in granting summary judgment under Rule 56 of the N.C. Rules of Civil Procedure for plaintiffs because, as a matter of law, defendants are not authorized by the laws of this State to promulgate rules such as the fetal model and reporting rules pursuant to the State Abortion Fund.

ALLEN v. CITY OF BURLINGTON BD. OF ADJUSTMENT

[100 N.C. App. 615 (1990)]

Affirmed.

Judges EAGLES and COZORT concur.