BRENT T. COCHRAN v. NORTH CAROLINA FARM BUREAU MUTUAL
INSURANCE COMPANY

No. 9324SC126

(Filed 4 January 1994)

**1. Insurance § 527 (NCI4th)— state-owned vehicle included in definition of underinsured vehicle**

An underinsured highway vehicle as defined in N.C.G.S. § 20-279.21(b)(4) can include a state-owned vehicle, and there was no merit to defendant's contention that, for a vehicle to qualify as an underinsured highway vehicle, it must first meet the definition of an uninsured motor vehicle in N.C.G.S. § 20-279.21(b)(3) which excluded state-owned vehicles.

**Am Jur 2d, Insurance §§ 22, 30, 59, 828 et seq.**

**2. Insurance § 690 (NCI4th)— no prejudgment interest in excess of policy limits**

Plaintiff was not entitled to prejudgment interest in excess of defendant's underinsured motorist policy limits.

**Am Jur 2d, Automobile Insurance § 428.**

Appeal by defendant from judgment entered 2 December 1992 in Watauga County Superior Court by Judge Charles C. Lamm, Jr. Heard in the Court of Appeals 2 December 1993.

*Di Santi, Watson & McGee, by Anthony S. di Santi, for plaintiff-appellee.*

*Willardson & Lipscomb, by John S. Willardson and William F. Lipscomb, for defendant-appellant.*

GREENE, Judge.

North Carolina Farm Bureau Mutual Insurance Company (Mutual) appeals from an order entered 2 December 1992 concluding that a state-owned vehicle operated by Robert Lee Hunt, III (Hunt) was an underinsured highway vehicle under N.C. Gen. Stat. § 20-279.21(b)(4) thereby entitling Brent T. Cochran (Cochran) to $100,000 of underinsured motorist (UIM) coverage from Mutual, and awarding interest to Cochran at the legal rate from 8 January 1992, the date Cochran filed this declaratory judgment action.

COCHRAN v. N.C. FARM BUREAU MUTUAL INS. CO.

[113 N.C. App. 260 (1994)]

Mutual and Cochran stipulated to the facts as follows: On 15 November 1990, Cochran was driving his motorcycle in Boone, North Carolina, when it collided with a Jeep registered to and owned by an agency of the State of North Carolina and operated by Hunt, an employee of the state agency, in the course and scope of his employment. The accident, which was caused by Hunt's negligence, resulted in serious injuries to Cochran.

On behalf of the State and Hunt, Travelers Insurance Company (Travelers) paid $100,000 in primary liability insurance limits to Cochran pursuant to a structured settlement agreement, $651.54 for property damage and $99,348.46 for personal injuries, leaving open Cochran's right to proceed against Mutual for $100,000 in UIM coverage. At the time of the accident, Mutual provided liability insurance coverage to Cochran under policy number AP 3795639 for the motorcycle involved in the accident and a 1985 Nissan pickup truck. This policy also provided a total of $200,000 UIM coverage, $100,000 on each vehicle for which Cochran paid separate premiums.

---

The issues presented are whether (I) an underinsured highway vehicle as defined in Section 20-279.21(b)(4) can include a state-owned vehicle; and (II) Cochran is entitled to prejudgment interest in excess of Mutual's UIM policy limits.

I

[1]   Under N.C. Gen. Stat. § 20-279.21(b)(4), an underinsured highway vehicle is defined as

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C.G.S. § 20-279.21(b)(4) (1993). Section 20-279.21(b)(4) contains the additional language that "[a]n 'uninsured motor vehicle,' as described in subdivision (3) of this subsection, includes an 'underinsured highway vehicle' . . . ." *Id.* Defendant argues that due to this additional language, for a vehicle to qualify as an underinsured highway vehicle, it must meet the definition of an uninsured motor vehicle; therefore, because an uninsured motor vehicle is defined in Section

20-279.21(b)(3) to exclude "[a] motor vehicle that is owned by . . . a state," an underinsured highway vehicle cannot include a state-owned vehicle. We disagree.

Where statutory language is clear and unambiguous, there is no room for judicial construction, and we must give the language its plain meaning; however, where the statutory language is ambiguous, we must resort to judicial construction to determine legislative intent. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990). The language in Section 20-279.21(b)(4) that an uninsured motor vehicle includes an underinsured highway vehicle is far from being clear and unambiguous as to whether to qualify as an underinsured highway vehicle, a vehicle must first meet the definition of uninsured motor vehicle set out in Section 20-279.21(b)(3). Furthermore, an underinsured highway vehicle has its own specific definition in Section 20-279.21(b)(4) which is different from the definition of an uninsured motor vehicle and which makes no mention of an exclusion for state-owned vehicles. Because of this ambiguity, we resort to tenets of statutory construction to ascertain legislative intent.

The intent of the legislature is controlling when we construe a statute, and we must look to the language of the act, its legislative history, and the circumstances surrounding the enactment of the act with an eye towards the evil sought to be remedied when determining the legislative intent. *North Carolina Bd. of Examiners for Speech v. State Bd. of Educ.*, 77 N.C. App. 159, 161, 334 S.E.2d 503, 505 (1985). Furthermore, when construing a statute, we must avoid a construction which will defeat or impair the object of a statute and should construct the statute in a way that, in practical application, will suppress the evil sought to be avoided. *Id.*

Although it is possible for a vehicle to be an underinsured vehicle and an uninsured vehicle simultaneously where the vehicle is insured with liability limits less than those required by Section 20-279.5 or where the vehicle is self-insured, to attempt to define **every** underinsured highway vehicle as an uninsured motor vehicle under all circumstances is, by the definitions contained in Sections 20-279.21(b)(3) and (b)(4), an impossible task. Not every vehicle that qualifies as an underinsured highway vehicle under Section 20-279.21(b)(4) can also meet the definition of an uninsured motor vehicle under Section 20-279.21(b)(3). A vehicle can qualify as an underinsured vehicle, which by definition has insurance, without

falling in any category of the definition of an uninsured motor vehicle, defined as a vehicle where (1) there is no insurance in at least the amounts specified in Section 20-279.5; (2) there is insurance but the insurance company denies coverage or becomes bankrupt; (3) there is no bond or deposit of money instead of liability insurance; (4) the owner of the vehicle has not qualified as a self-insurer under Section 20-279.33; or (5) a vehicle is not subject to the Motor Vehicle Safety and Financial Responsibility Act. N.C.G.S. § 20-279.21(b)(3). Due to the impossibility of every underinsured highway vehicle meeting the definition of an uninsured motor vehicle as defined in Section 20-279.21(b)(3) and because state-owned vehicles are specifically excluded in the circumstance where an uninsured motor vehicle is involved, but are not specifically excluded in the definition of an underinsured highway vehicle in Section 20-279.21(b)(4), we do not believe the legislature intended to fully incorporate the definition of an uninsured motor vehicle into the definition of an underinsured highway vehicle.

Furthermore, an opposite construction of the language contained in Section 20-279.21(b)(4) would conflict with the underlying policy of the statute recognized by this Court and our Supreme Court. N.C. Gen. Stat. § 20-279.21(b) is a part of the Motor Vehicle Safety and Financial Responsibility Act (the Act) which is a "remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). The concept of UIM coverage "allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate the injured party for his full damages." *Harris v. Nationwide Mutual Ins. Co.*, 332 N.C. 184, 189, 420 S.E.2d 124, 127 (1992) (quoting J. Snyder, Jr. *North Carolina Automobile Insurance Law* § 30-1 (1988) ). This purpose of the Act indicates that to construe the statute to deny UIM coverage to an individual who has attempted to protect himself by purchasing UIM coverage simply because he had the misfortune of being involved in an accident with a state-owned vehicle which otherwise meets the definition of an underinsured highway vehicle, would defeat the beneficial object of the statute, contrary to legislative intent. For these reasons, we hold that an underinsured highway vehicle as defined in Section 20-279.21(b)(4) can include a state-owned vehicle.

II

[2]  Mutual also contends that Cochran is not entitled to prejudgment interest in excess of its UIM policy limits. We agree.

Part C of Cochran's Mutual policy which deals with uninsured motorist coverage and incorporates Part D dealing with uninsured and underinsured motorist coverage provides that Mutual:

> will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
>
> 1. Bodily injury sustained by an insured and caused by an accident, and
>
> 2. Property damage caused by an accident.

Our Supreme Court recently interpreted an almost identical insurance policy provision in *Baxley v. Nationwide Mutual Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993). The Court concluded that the term "damages" in the UIM portion of the insurance policy includes prejudgment interest on a jury verdict in the underlying tort action; however, the Court held that the insurance company must "pay plaintiff's resulting damages . . . up to, but not in excess of, its UIM policy limits." *Id.* at 11, 430 S.E.2d at 901.

Based on *Baxley*, Mutual has promised to pay Cochran's resulting damages, which includes prejudgment interest; however, the amount of damages owed by Mutual is "up to, but not in excess of, its UIM policy limits." For these reasons, the trial court erred in awarding Cochran prejudgment interest which exceeded the $100,000 available to Cochran under Mutual's UIM policy limits.

In sum, we affirm the trial court's judgment that the state-owned vehicle in this case qualified as an "underinsured highway vehicle" and was not excluded by language in Section 20-279.21(b)(3), but we reverse that portion of the judgment awarding Cochran prejudgment interest.

Affirmed in part, reversed in part.

Judges COZORT and WYNN concur.