CARTER-HUBBARD PUBLISHING COMPANY, INC., Plaintiff v. WRMC HOSPITAL OPERATING CORPORATION, Defendant

No. COA05-420

(Filed 1 August 2006)

## 1. Public Records— hospital's contract to purchase medical practice—not competitive health care information

A public hospital's contract to purchase the practice of the only gastroenterologist in the county was not exempt from the Public Records Act as containing competitive health care information, and the trial court correctly granted summary judgment for plaintiff newspaper. The legislature did not intend to keep confidential dealings such as this, which do not involve trade secret information or competitive price lists. N.C.G.S. §§ 131E-97.3, 131E-99.

## 2. Pleadings— denial of motion to amend—no abuse of discretion

The trial court did not abuse its discretion by denying plaintiff's motion to amend its complaint to allege a violation of the Open Meetings Law where defendant was not given notice of the purported violation and was not prepared to respond to it. There was likewise no abuse of discretion in the denial of costs and fees.

Judge CALABRIA concurring in part and dissenting in part.

Appeal by defendant from an order entered 24 January 2005 by Judge James M. Webb in Wilkes County Superior Court. Heard in the Court of Appeals 2 November 2005.

*Willardson, Lipscomb & Miller, LLP, by John S. Willardson, for plaintiff-appellee.*

*McElwee Firm, PLLC, by John M. Logsdon, for defendant-appellant.*

CARTER-HUBBARD PUB'LG CO. v. WRMC HOSP. OPERATING CORP.

[178 N.C. App. 621 (2006)]

*The Bussian Law Firm, PLLC, by John A. Bussian, for North Carolina Press Association, amicus curiae.*

*Linwood L. Jones for North Carolina Hospital Association, amicus curiae.*

BRYANT, Judge.

Wilkes Regional Medical Center Hospital Operating Corporation ("defendant") appeals the trial court's order granting summary judgment in favor of Carter-Hubbard Publishing Company, Inc. ("plaintiff"). Plaintiff appeals the trial court's denial of motions to amend the complaint and to tax costs and attorney fees against defendant. For the reasons stated herein, we affirm.

Plaintiff publishes the *Wilkes Journal Patriot,* a major news source for the citizens of Wilkes County. Defendant is the governing body of Wilkes Regional Medical Center ("WRMC"), a public hospital owned by the Town of North Wilkesboro. In 2004, defendant purchased Dr. Nicholas Cirillo's ("Dr. Cirillo") medical practice. This purchase took place because "Dr. Cirillo was the only gastroenterologist located in Wilkes County, and WRMC [wanted] to assure the continued availability of gastroenterological services to [WRMC's] patients." Subsequently, plaintiff requested a copy of defendant's purchase agreement with Dr. Cirillo (the "contract"). Defendant refused to provide the contract, contending that the contract amounted to "competitive health care information" under N.C. Gen. Stat. § 131E-97.3 and, therefore, was not subject to disclosure. Plaintiff believed, under the North Carolina Public Records Act, defendant was required to disclose the contract.

On 8 September 2004, plaintiff filed suit, pursuant to N.C. Gen. Stat. § 132-9, seeking an order compelling defendant to disclose the contract. On 25 October 2005, defendant filed an Answer stating the contract was not subject to disclosure because it was considered "competitive health care information" within the meaning of N.C. Gen. Stat. § 131E-97.3. On 20 January 2005, at a hearing held in Wilkes County Superior Court, the court granted summary judgment in favor of the plaintiff, concluding that the contract did not contain "competitive health care information" and "should be produced in its entirety." Defendant moved to stay the court's order pending appeal. The trial court denied defendant's motion and ordered defendant to produce the contract. Defendant filed a Petition for Writ of Supersedeas with this Court on 25 January 2005. On 16 February 2005,

we granted defendant's motion and stayed the trial court's order pending appeal.

On review of a motion for summary judgment, this Court considers whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). In this case, there were no genuine issues of material fact and summary judgment was appropriate. However, we consider *de novo* whether the trial court properly concluded that *plaintiff* was entitled to judgment as a matter of law. *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 323, 524 S.E.2d 386, 388, *aff'd in part on other grounds*, 353 N.C. 240, 539 S.E.2d 274 (2000).

In its order the trial court stated: "The contract in question does not contain 'competitive health care information' within the meaning of [N.C. Gen. Stat. §] 131E-97.3 . . . and should be produced[.]" In this appeal we decide whether the trial court erred in finding the contract at issue is a public record and granting summary judgment for plaintiff. Therefore, in this case of first impression, we determine whether a public hospital's contract to purchase a medical practice should be considered "competitive health care information" and therefore exempt from the Public Records Act. *See* N.C. Gen. Stat. § 131E-97.3 (2005).

[1] Under the Public Records Act, our Legislature granted liberal access to public records. *See McCormick v. Hanson Aggregates Southeast, Inc.*, 164 N.C. App. 459, 596 S.E.2d 431 (2004); *see also* N.C. Gen. Stat. §§ 132-1(b), 132-6 (2005) (defining public records as "the property of the people" and allowing examination of public records).

"Public records" include:

all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions[.]

N.C. Gen. Stat. § 132-1(a) (2005). "Absent clear statutory exemption or exception, documents falling within the definition of 'public

CARTER-HUBBARD PUB'LG CO. v. WRMC HOSP. OPERATING CORP.

[178 N.C. App. 621 (2006)]

records' in the Public Records Law must be made available for public inspection." *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 462, 515 S.E.2d 675, 685 (1999) (citation omitted). Exceptions and exemptions to the Public Records Act must be construed narrowly. *See News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992) (In the absence of clear statutory exemption or exception, documents falling within the definition of "public records" in the Public Records Act must be made available for public inspection.); *see also Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 472, 480 S.E.2d 681, 683 (1997) ("If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms."); *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.") (internal quotations and citations omitted).

Defendant argues the contract at issue amounts to "competitive health care information" and is therefore exempt from the public records statute. We note that our legislature has exempted from the definition of "public record" what it refers to as "competitive health care information."

Information relating to competitive health care activities by or on behalf of hospitals and public hospital authorities shall be confidential and not a public record under Chapter 132 of the General Statutes; provided that any contract entered into by or on behalf of a public hospital or public hospital authority, as defined in G.S. 159-39, shall be a public record unless otherwise exempted by law, or the contract contains competitive health care information[.]

N.C.G.S. § 131E-97.3 (2005).

Defendant contends the legislature has linked the term "competitive health care information" with the term "confidential commercial information"[1] in determining what is protected under

---

1. *See* N.C. Gen. Stat. § 132-1.2:

Confidential information. Nothing in this Chapter shall be construed to require or authorize a public agency or its subdivision to disclose any information that:

(1) Meets all of the following conditions:

    a. Constitutes a "trade secret" as defined in G.S. 66-152(3).

    b. Is the property of a private "person" as defined in G.S. 66-152(2).

**CARTER-HUBBARD PUB'LG CO. v. WRMC HOSP. OPERATING CORP.**

[178 N.C. App. 621 (2006)]

N.C.G.S. § 131E-97.3 (2005). Defendant therefore urges this court to take a very broad view of the term. However, "competitive health care information" is not specifically defined in our statute. "Health care" is defined in the American Heritage Dictionary as "[t]he prevention, treatment, and management of illness and the preservation of well-being through the services offered by the medical and allied health professions." The American Heritage College Dictionary 626 (3rd ed. 1997). Pursuant to N.C. Gen. Stat. § 131E-99 "competitive health care information" includes "financial terms" of a contract and any "health care information directly related to financial terms in a contract." N.C. Gen. Stat. § 131E-99 (2005). North Carolina General Statutes, Section 131E-99 is the only statute that gives some indication of what the legislature intended by its use of the term "competitive health care information."

"The cardinal principle of statutory construction is that the intent of the legislature is controlling. In ascertaining the legislative intent courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *State ex rel. Util. Comm'n v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983) (citations omitted). " 'Other indicia considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption[.]' " *County of Lenoir v. Moore*, 114 N.C. App. 110, 115, 441 S.E.2d 589, 592 (1994) (quoting *In Re Banks*, 295 N.C. 236, 239-40, 244 S.E.2d 386, 389 (1978)), *aff'd*, 340 N.C. 104,

---

c. Is disclosed or furnished to the public agency in connection with the owner's performance of a public contract or in connection with a bid, application, proposal, industrial development project, or in compliance with laws, regulations, rules, or ordinances of the United States, the State, or political subdivisions of the State.

d. Is designated or indicated as "confidential" or as a "trade secret" at the time of its initial disclosure to the public agency.

(2) Reveals an account number for electronic payment as defined in G.S. 147-86.20 and obtained pursuant to Articles 6A or 6B of Chapter 147 of the General Statutes or G.S. 159-32.1.

(3) Reveals a document, file number, password, or any other information maintained by the Secretary of State pursuant to Article 21 of Chapter 130A of the General Statutes.

(4) Reveals the electronically captured image of an individual's signature, date of birth, drivers license number, or a portion of an individual's social security number if the agency has those items because they are on a voter registration document.

N.C.G.S. § 132-1.2 (2005); *see also* N.C. Gen. Stat. § 1A-1, Rule 26 (2005) ("Protection of Confidential Information").

455 S.E.2d 158 (1995). When multiple statutes address a single matter or subject, they must be construed together, *in pari materia,* to determine the legislature's intent. *Whittington v. N.C. Dept. of Human Res.,* 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990). Statutes *in pari materia* must be harmonized, "to give effect, if possible, to all provisions without destroying the meaning of the statutes involved." *Id.* Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute[.]" *Food Stores v. Bd. of Alcoholic Control,* 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966) (quoting 82 C.J.S. *General and Specific Statutes* § 369 (1953)).

Under a prior version of N.C.G.S. § 131E-97.3 any contract entered into by a public hospital (whether or not it contained competitive healthcare information) was a public record unless otherwise exempted.

Information relating to competitive health care activities by or on behalf of hospitals shall be confidential and not a public record under Chapter 132 of the General Statutes; *provided that any contract entered into by or on behalf of a public hospital, as defined in G.S. 59-39, shall be a public record unless otherwise exempted by law.*

N.C. Gen. Stat. § 131E-97.3 (1994) (emphasis added). Thereafter the statute was amended and in its current version allows a contract entered into by a public hospital to be exempt from the public records requirement only if the contract contains competitive health care information. *See* N.C.G.S. § 131E-97.3 (2005). Because N.C.G.S. § 131E-99 appears to be one of the few statutes to guide us as to what the legislature intended by using the N.C.G.S. § 131E-97.3 term "competitive health care information," we construe these two statutes together. N.C. Gen. Stat. § 131E-99 limits as confidential and not a public record, only that information relating to "financial terms and other competitive health care information directly related to financial terms" in a *health care services contract.* Such language, while arguably applicable to financial terms of a contract involving the "prevention, treatment, and management of illness" does not encompass

the acquisition of a medical practice. Further, the contracts under this statute are between the hospital and those who pay the hospital as opposed to employees or potential employees.

> The financial terms and other competitive health care information directly related to the financial terms in a health care services **contract between a hospital or a medical school and a managed care organization, insurance company, employer, or other payer** is confidential and not a public record under Chapter 132 of the General Statutes. . . .

N.C.G.S. § 131E-99 (2005).

Reading these two statutes together the contract terms that are not financial nor financially related would not be considered competitive health care information and therefore would not be exempt. Unlike the price lists in *Wilmington Star-News*, which specified costs and reimbursement rates of medical services to customers, and which "a reasonable trier of fact could conclude that the price lists constituted trade secrets," the contract here is a contract with a public hospital to purchase a medical practice. There is nothing in the record to suggest that other hospitals or entities were competing for Dr. Cirillo's medical practice, and therefore nothing to suggest this contract contained "financial terms" or health care information directly related to financial terms such that this contract should be kept confidential.

Defendants cite contract terms such as price, assets and liabilities, future obligations (e.g. performance bonuses) and other financial information as "competitive health care information." Defendants claim disclosure of such information would place the hospital at a future competitive disadvantage, impair the ability to acquire future confidential information and is a type of information that would not customarily be released between two non-public entities. Defendants argue that the public may be outraged at learning the purchase price without understanding future profit implications.

We decline defendant's offer to more broadly define the term "competitive health care information." Defendant's definition is based on competitive business aspects of public hospital operations, aspects which, unless they involve trade secret information, are also likely subject to disclosure. We do not think the legislature intended such business dealings—which do not involve trade secret informa-

tion nor competitive price lists—to be kept confidential. We do not read N.C.G.S. § 131E-97.3 nor 131E-99 separately or *in para materia* to require such secrecy.

*Wilmington Star-News v. New Hanover Reg'l Med. Ctr.*, 125 N.C. App. 174, 480 S.E.2d 53, *appeal dismissed*, 346 N.C. 557, 488 S.E.2d 826 (1997), analyzed the prior version of this statute. In *Wilmington Star-News* this Court held a public hospital and HMO were not entitled to the benefit of the statutory exemption from disclosing price lists in a contract between the public hospital and the HMO. *Id.* The price lists were not property of a private person within the meaning of N.C. Gen. Stat. § 132-1.2(1)(b),[2] therefore the information was not exempted from disclosure. *Id.*

> We recognize that this holding arguably may adversely affect public hospitals' ability to compete with nongovernmental entities but we consider that question an appropriate legislative issue. As to any arguable competitive disadvantage to [the public hospital], we consider appropriate the succinct observation of the United States District Court for the District of Columbia, "disclosure of prices charged the Government is a cost of doing business with the Government." *Racal-Milgo Gov't Sys. v. Small Business Admin.*, 559 F. Supp. 4, 6 (D.C. 1981).

*Wilmington Star-News* at 182, 480 S.E.2d at 57 (emphasis added).

Even though the statute changed such that contracts between public hospitals and HMOs were not automatically considered public record, such public hospital contracts are nevertheless subject to the determination of whether they contain "competitive health care information" before any exemption applies. Moreover, the spirit of the public records statute survives—public records are the "property of the people"; and the language of the United States District Court for the District of Columbia is equally applicable—"disclosure of prices charged the Government is a cost of doing business with the Government[.]" *Racal-Milgo Gov't Sys. v. Small Business Admin.*, 559 F. Supp. 4, 6 (D.C. 1981). Therefore, after careful review of the record on appeal, including review of the contract previously viewed by the trial court in camera, we hold that the trial court properly determined the contract "does not contain competitive health care information" and therefore should be disclosed to the public.

---

2. This section protects the property of a private person which property constitutes trade secret information as defined in N.C. Gen. Stat. § 66-152(2).

## Cross-Assignments

**[2]** Plaintiff raises two cross-assignments of error: (1) the trial court erred in denying its motion to amend the complaint to allege violations by the defendant of the North Carolina's Open Meeting Law; and (2) the trial court erred in denying plaintiff's request to tax costs and attorney fees against the defendant. On appeal, we review both a trial court's denial of a motion to amend a complaint and a trial court's denial of costs and fees under an abuse of discretion standard. *See Thorpe v. Perry-Riddick*, 144 N.C. App. 567, 570, 551 S.E.2d 852, 855 (2001); *Martin v. Hare*, 78 N.C. App. 358, 360-61, 337 S.E.2d 632, 634 (1985). An abuse of discretion occurs "where a court's ruling is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Thorpe*, 144 N.C. App. at 570, 551 S.E.2d at 855.

As to the denial of the motion to amend, the trial court declared no reason for the denial of the motion. We may, however, examine any "apparent reasons for such denial." *Hare*, 78 N.C. App. at 360-61, 337 S.E.2d at 634. It is evident from the transcript that defendant was not given notice of the purported open meetings law violation and, therefore, was not prepared to respond to it. As such, the trial court's denial of plaintiff's motion did not amount to an abuse of discretion. Likewise, the record reveals no abuse of discretion in the trial court's denial of costs and fees.

Affirmed.

Judge HUDSON concurs.

Judge CALABRIA concurring in part and dissenting in part in a separate opinion.

CALABRIA, Judge, concurring in part and dissenting in part.

I fully concur with the portion of the majority's opinion dealing with plaintiff's cross-assignments of error. However, I must respectfully dissent from the majority's narrow interpretation of the scope of the "competitive health care information" exemption under N.C. Gen. Stat. § 131E-97.3 (2005), despite the absence of any words of limitation in the plain language of the applicable statute. Because N.C. Gen. Stat. § 131E-97.3 establishes that the General Assembly sought to place public and private hospitals on equal terms in negotiating con-

tracts containing *any type* of competitive health care information, my approach would be to interpret N.C. Gen. Stat. § 131E-97.3 more broadly to effectuate our Legislature's intent.

Under the Public Records Act, our Legislature has generally granted liberal access to public records. *See, e.g., Knight Publ'g v. Charlotte-Mecklenburg Hosp. Auth.*, 172 N.C. App. 486, 489, 616 S.E.2d 602, 605 (2005). Thus, "*[i]n the absence of [a] clear statutory exemption or exception,* documents falling within the definition of 'public records' in the Public Records Act must be made available for public inspection." *Id.* (citation and internal brackets omitted) (emphasis added). *See also* N.C. Gen. Stat. §§ 132-1(b), 132-6 (2005) (defining public records as "the property of the people" and allowing examination of public records).

Our Legislature has created a clear statutory exemption from the definition of "public record" for what it refers to as "competitive health care information":

> *Information relating to competitive health care activities by or on behalf of hospitals and public hospital authorities shall be confidential and not a public record under Chapter 132 of the General Statutes*; provided that any contract entered into by or on behalf of a public hospital or public hospital authority, as defined in G.S. 159-39, shall be a public record unless otherwise exempted by law, *or the contract contains competitive health care information*[.]

N.C. Gen. Stat. § 131E-97.3 (2005).

In this case of first impression, we are asked to consider the scope of "competitive health care information." Defendant argues the contract at issue amounts to "competitive health care information." In support of this argument, defendant produced, *inter alia*, an affidavit of the President and Chief Operating Officer of WRMC, Ted Chapin ("Chapin"). Chapin stated,

> If a private provider were allowed to have access to the terms and conditions of the contracts of a public hospital such as WRMC, the private provider would have a substantial competitive advantage when negotiating for physician practices based on having superior information. If the substantive provisions of an existing contract were available to a different physician practice during subsequent negotiations, WRMC would be at a competitive disadvantage during the negotiations. Essentially, WRMC would be

negotiating against itself, based upon its prior contracts. By contrast, a private health care provider which does not have to disclose the contents of its contracts would not be constrained during negotiations by any of the terms in prior or existing contracts.

Plaintiff counters, via its affidavit of Julius C. Hubbard, Jr. ("Hubbard"), the Vice President of Carter-Hubbard, that:

> If public funds are utilized to purchase a physician's practice, the public has the right to know how those funds are being spent. Year-end profits and losses of Wilkes Regional Medical Center will certainly be influenced by the expenditure of funds for acquisition of physician's practices and the public has a right to know how those funds have been spent. To hide behind the guise of "competitive health care information" as justification for providing that information is to deprive the citizens of Wilkes County . . . information to which they are justly entitled.

In order to interpret our Legislature's intent, it is necessary to begin with the plain language of the statute. *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning") (citations omitted). The plain language of the statute exempts from the term "public record" contracts that include "competitive health care information." "Competitive" is derived from the term "competition." "Competition" means "[t]he effort or action of two or more commercial interests to obtain the same business from third parties." Blacks Law Dictionary 7th Edition (1999). "Healthcare" means "[t]he prevention, treatment, and management of illness and the preservation of well-being through the services offered by the medical and allied health professions." The American Heritage College Dictionary 3rd Edition (1997).

Pursuant to the plain language of the statute, I would hold the contract at issue amounts to "competitive health care information." The contract relates to "healthcare" in that the purchase of Dr. Cirillo's private practice ensured the "prevention, treatment, and management" of gastroenterological services to Wilkes County residents. Likewise, the agreement is "competitive" in that public and private hospitals commonly compete in the marketplace to obtain physician practices. The contract remains "competitive" even in the absence of specific evidence in the record that hospitals were directly competing for Dr. Cirillo's particular practice because of the impact

the release of the specific terms of the contract would have on future negotiations of WRMC by placing WRMC in an inferior negotiating position for health care services compared to private hospitals. Thus, the contract at issue is within the scope of the exemption stated in N.C. Gen. Stat. § 131E-97.3.

This plain language analysis is further supported by the history of N.C. Gen. Stat. § 131E-97.3. *See Cochran v. North Carolina Farm Bureau Mut. Ins. Co.*, 113 N.C. App. 260, 262, 437 S.E.2d 910, 911-12 (1994) (noting it is appropriate to consider "circumstances surrounding the enactment of the act with an eye towards the evil sought to be remedied when determining the legislative intent").

A prior version of this statute read:

> Information relating to competitive health care activities by or on behalf of hospitals shall be confidential and not a public record under Chapter 132 of the General Statutes; *provided that any contract entered into by or on behalf of a public hospital, as defined in G.S. 59-39, shall be a public record unless otherwise exempted by law.*

N.C. Gen. Stat. § 131E-97.3 (1994) (emphasis added).

Under this prior version of the statute, this Court held,

> The plain language of this section exempts certain information from the Public Records Act when two requirements are met: (1) The material must relate to competitive health care; and (2) *the material must not be a contract executed with a public hospital.*

*Wilmington Star News, Inc. v. New Hanover Regional Medical Center v. PHP, Inc.*, 125 N.C. App. 174, 178-79, 480 S.E.2d 53, 55 (1997) (emphasis added). Thus, under the prior version of this statute, if a contract was "entered into . . . by or on behalf of a public hospital" it would be considered a public record, unless otherwise exempted. N.C. Gen. Stat. § 131E-97.3 (1994).

In a case analyzing the prior version of the statute, this Court held that price lists in a contract between a public hospital and a private HMO were subject to disclosure under the North Carolina Public Records Act. *Wilmington Star News, Inc.*, 125 N.C. App. at 179, 480 S.E.2d at 55. Because the price lists were included in a contract executed with a public hospital, under the plain language of

the prior statute, the price lists were not exempt from the Public Records Act. *Id.*

At the time of the *Wilmington* case, the Legislature had already enacted N.C. Gen. Stat. § 131E-99 of the Hospital Licensure Act, entitled "Confidentiality of health care contracts." Ch. 713, 1995 N.C. Sess. Laws 345. The version in effect at the time of the *Wilmington* case stated:

*The financial terms or other competitive health care information in a contract* related to the provision of health care between a hospital and a managed care organization, insurance company, employer, or other payer is ·confidential and not a public record under Chapter 132 of the General Statutes.

Ch. 713, 1995 N.C. Sess. Laws 345 (emphasis added). However, this Court was unable to rely on N.C. Gen. Stat. § 131E-99 in the *Wilmington* case because, at the time, N.C. Gen. Stat. § 131E-99 "specifically provided that [it shall] not affect any litigation pending prior to ratification on 21 June 1996 and shall expire on 1 June 1997." *Wilmington Star News, Inc.*, 125 N.C. App. at 178, 480 S.E.2d at 55.

Subsequently, in 1997, the Legislature amended § 131E-99 to read:

The financial terms and other competitive health care information *directly related to the financial terms* in a health care services contract between a hospital or a medical school and a managed care organization, insurance company, employer, or other payer is confidential and not a public record under Chapter 132 of the General Statutes.

An Act Pertaining to Confidentiality of Healthcare Contracts, ch. 123, 1997 N.C. Sess. Laws 238 (emphasis added). The Legislature also removed the expiration date set forth in the earlier version. *See* ch. 123, 1997 N.C. Sess. Laws 238. Accordingly, as of May 1997, contracts between public hospitals and private HMOs were exempt from disclosure under this separate provision.

In 2001, the Legislature amended § 131E-97.3 to its current version. N.C. Gen. Stat. § 131E-97.3 (2005). Prior to the amendment, all contracts of public hospitals constituted public records unless otherwise exempted. N.C. Gen. Stat. § 131E-97.3 (1994). As stated previously, contracts between public hospitals and HMOs were already exempt under the separate provision of N.C. Gen. Stat. § 131E-99. However, the Legislature amended the statute to also exempt con-

tracts of public hospitals that contain "competitive health care information." N.C. Gen. Stat. § 131E-97.3.

*Amicus Curiae* North Carolina Press Association ("Press Association") argues that exemptions to the Public Records Act must be narrowly construed and that " 'competitive health care information' as used by the General Assembly reaches only financial information that relates directly to the provision of health care services on a competitive basis to HMOs and similar entities." While I agree with the Press Association's contention that generally our courts interpret exemptions to the Public Records Act narrowly, I disagree with the Press Association regarding our Legislature's intent in using the term "competitive health care information." If our Legislature intended to give information categorized as "competitive health care information" this narrow meaning, it would be redundant to enact N.C. Gen. Stat. § 131E-97.3 since this particular exemption already existed in N.C. Gen. Stat. § 131E-99. *See State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) ("It is always presumed that the [L]egislature acted with care and deliberation and with full knowledge of prior and existing law" (citations omitted)).

To the contrary, the plain language of these statutes indicates that they are not equivalent. North Carolina General Statute § 131E-99 is a narrow statute that enumerates specific financial terms and other competitive health care information relating to financial terms as exempt from public record status. Pursuant to N.C. Gen. Stat. § 131E-99, only contracts between certain enumerated entities are exempt and the information at issue must be financial terms or other competitive health care information directly related to financial terms in a "health care services contract." On the other hand, N.C. Gen. Stat. § 131E-97.3 states no limitations on either the parties to the contract (except that the contract must be by or on behalf of a public hospital or public hospital authority) or the type of contract, and there is no evidence in the language of the statute or our review of the scant legislative history that our Legislature intended to include these constraints. If the Legislature intended to include such constraints it would have done so explicitly as it did when it changed the language of N.C. Gen. Stat. § 131E-99 from "financial terms or other competitive health care information in a contract . . ." to "financial terms and other competitive health care information *directly related to the financial terms*[.]" (Emphasis added). Because of the absence of any of the constraints our Legislature included in other statutory exemptions, I would hold that "competitive health care information" in-

cludes all contracts that "relat[e] to competitive health care activities" by or on behalf of a public hospital or public hospital authority. N.C. Gen. Stat. § 131E-97.3(a). *See also Gibbons v. Cole*, 132 N.C. App. 777, 780, 513 S.E.2d 834, 836 (1999) ("[Our courts] are without power to create provisions and limitations not contained in the language of the statute itself" (citation omitted)).

For reasons previously mentioned, I would hold that the purchase of a medical practice is a competitive health care activity, and thus, the contract at issue is "competitive health care information." In contrast, other hospital contracts such as a pure construction contract would not amount to a contract regarding competitive health care information because a construction contract does not directly relate to "[t]he prevention, treatment, and management of illness and the preservation of well-being through the services offered by medical and allied health professions." The American Heritage College Dictionary 3rd Edition (1997). For the foregoing reasons, I would remand to the trial court for entry of summary judgment in favor of defendant.